## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

In re:

WALTER ENERGY, INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 15-02741-TOM11

Jointly Administered

## DEBTORS' JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Stephen J. Shimshak
Kelley A. Cornish
Claudia R. Tobler
Lauren Shumejda
Ann K. Young
Michael S. Rudnick
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000

BRADLEY ARANT BOULT CUMMINGS LLP
Patrick Darby
Jay Bender
Cathleen Moore
James Bailey
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000

*Proposed Counsel for the Debtors and Debtors-in-Possession*

Dated: August 26, 2015

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Walter Energy, Inc. (9953); Atlantic Development and Capital, LLC (8121); Atlantic Leaseco LLC (5308); Blue Creek Coal Sales, Inc. (6986); Blue Creek Energy, Inc. (0986); J.W. Walter, Inc. (0648); Jefferson Warrior Railroad Company, Inc. (3200); Jim Walter Homes, LLC (4589); Jim Walter Resources, Inc. (1186); Maple Coal Co. LLC (6791); Sloss-Sheffield Steel & Iron Company (4884); SP Machine, Inc. (9945); Taft Coal Sales & Associates, Inc. (8731); Tuscaloosa Resources, Inc. (4869); V Manufacturing Company (9790); Walter Black Warrior Basin LLC (5973); Walter Coke, Inc. (9791); Walter Energy Holdings, LLC (1596); Walter Exploration & Production LLC (5786); Walter Home Improvement, Inc. (1633); Walter Land Company (7709); Walter Minerals, Inc. (9714); and Walter Natural Gas, LLC (1198). The location of the Debtors' corporate headquarters is 3000 Riverchase Galleria, Suite 1700, Birmingham, Alabama 35244-2359.

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS AND INTERPRETATION ..................................................2

    A.    Definitions ..................................................................................2
    B.    Interpretation, Application of Definitions and Rules of Construction ..................18
    C.    Computation of Time ..............................................................19

ARTICLE II CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........19

    A.    Introduction ..............................................................................19

ARTICLE III VOTING AND DISTRIBUTIONS .......................................................25

ARTICLE IV PROCEDURES FOR DETERMINATION OF CLAIMS AND
INTERESTS ..........................................................................30

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES,
EMPLOYEE BENEFITS AND INSURANCE POLICIES .............................32

ARTICLE VI IMPLEMENTATION OF THE PLAN ..................................................37

ARTICLE VII CONDITIONS PRECEDENT ...........................................................42

ARTICLE VIII EFFECT OF THE PLAN ON ASSETS, CLAIMS AND INTERESTS .............45

ARTICLE IX MISCELLANEOUS PROVISIONS .......................................................50

Case 15-02741-TOM7    Doc 566    Filed 08/26/15    Entered 08/26/15 16:50:48    Desc Main
Document    Page 2 of 62

## PLAN SUPPLEMENTS

The following Plan Supplement Documents shall be filed on or before the Plan Supplement Filing Date:

Plan Supplement 1:     Collective Bargaining Agreements

Plan Supplement 2A:   Schedule of Insurance Policies and Agreements

Plan Supplement 2B:   Schedule of Surety Bonds and Agreements

Plan Supplement 3:     List of Merged or Dissolved Debtors

Plan Supplement 4:     Form of New Organizational Documents for Reorganized Debtors

Plan Supplement 5A:   Post-Effective Date Board of Directors and Officers of Reorganized Walter Energy

Plan Supplement 5B:   Post-Effective Date Board of Directors and Officers of Reorganized Debtors other than Reorganized Walter Energy

Plan Supplement 6:     Employee Compensation and Benefit Programs to be Rejected Post-Effective Date

Plan Supplement 7:     Exit Financing Commitment Agreements

Plan Supplement 8:     Retained Causes of Action

Plan Supplement 9A:   Schedule of Rejected Executory Contracts and Unexpired Leases

Plan Supplement 9B:   Schedule of Assumed Executory Contracts and Unexpired Leases

Plan Supplement 10:   Letters of Credit

Plan Supplement 11:   Terms of Post-Emergence Employee Benefit Plans

Case 15-02741-TOM7    Doc 566    Filed 08/26/15    Entered 08/26/15 16:50:48    Desc Main
Document      Page 3 of 62

# INTRODUCTION[2]

      Walter Energy, Inc. and its affiliated debtors and debtors-in-possession in the above-captioned Chapter 11 Cases hereby propose this joint plan of reorganization for the resolution of Claims against and Interests in each of the Debtors pursuant to chapter 11 of the Bankruptcy Code. The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

      The Plan contemplates a comprehensive reorganization of the Debtors through a debt-to-equity conversion of approximately $1.9 billion of the Company's prepetition secured debt. The Plan resolves all outstanding Claims against, and Interests in, the Debtors.

      Prior to the Petition Date, the Debtors negotiated the terms of their restructuring with 70.73% of the Holders of First Lien Debt Claims, the terms of which are set forth in the Restructuring Support Agreement executed by such parties. Reference is made to the Disclosure Statement, including the exhibits thereto, for a summary of the Restructuring Support Agreement and an overview of the Company's history, business, properties, results of operations, and projections for future operations and risk factors, together with a summary and analysis of the Plan. All Holders of Claims against the Debtors are encouraged to consult the Disclosure Statement and to read the Plan carefully before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, the Restructuring Support Agreement and the Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan prior to its substantial consummation.

      The Plan does not provide for the substantive consolidation of any of the Debtors' estates. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. Accordingly, the Plan constitutes a separate plan of reorganization for each Debtor in the Chapter 11 Cases.

      **NO SOLICITATION MATERIALS HAVE YET BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.**

---

[2]    Capitalized terms used in this Introduction have the meaning ascribed to them in Article I of the Plan.

# ARTICLE I
## DEFINITIONS AND INTERPRETATION

        **A.**    **Definitions.**  The following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below.  A term used in the Plan and not defined in the Plan but that is defined in the Bankruptcy Code has the meaning set forth in the Bankruptcy Code.

        1.1.   "8.500% Notes Indenture" means that certain Indenture dated as of March 27, 2013 for the 8.500% Senior Notes due 2021 (as further amended, supplemented or otherwise modified from time to time) among Walter Energy, as issuer, the guarantors from time to time parties thereto, and UMB Bank, National Association, as successor trustee to Wilmington Trust, National Association.

        1.2.   "8.500% Notes Indenture Trustee" means UMB Bank, National Association, or any successor thereto, as successor trustee to Wilmington Trust, National Association.

        1.3.   "8.500% Unsecured Notes" means those 8.500% Senior Notes issued under the 8.500% Notes Indenture.

        1.4.   "8.500% Unsecured Note Claim" means any Claim arising under or evidenced by the 8.500% Notes Indenture, 8.500% Unsecured Notes or any other agreements related thereto.

        1.5.   "9.875% Notes Indenture" means that certain Indenture dated as of November 21, 2012 for the 9.875% Senior Notes due 2020 (as further amended, supplemented or otherwise modified from time to time) among Walter Energy, as issuer, the guarantors from time to time parties thereto, and Delaware Trust Company, as successor trustee to Wilmington Trust, National Association.

        1.6.   "9.875% Notes Indenture Trustee" means Delaware Trust Company or any successor thereto, as successor trustee to Wilmington Trust, National Association.

        1.7.   "9.875% Unsecured Notes" means those 9.875% Senior Notes due 2020 issued under the 9.875% Notes Indenture.

        1.8.   "9.875% Unsecured Note Claim" means any Claim arising under or evidenced by the 9.875% Notes Indenture, 9.875% Unsecured Notes or any other agreements related thereto.

        1.9.   "1974 MEPP Withdrawal Claim" means any Claim against the Debtors arising from the Debtors' withdrawal from the UMWA 1974 Multiemployer Pension Plan.

        1.10.   "Adequate Protection Claim" means a Claim of the Prepetition Secured Parties for adequate protection arising under the Cash Collateral Order.

2

1.11. "Administrative Claim" means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under Section 503(b) of the Bankruptcy Code and entitled to priority under Sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estates, (b) any actual and necessary costs and expenses of operating the business of the Debtors, (c) any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, (d) all compensation and reimbursement of expenses to the extent awarded by the Bankruptcy Court under Sections 330, 331 or 503 of the Bankruptcy Code, (e) any fees or charges assessed against the Estates under Section 1930 of title 28 of the United States Code, and (f) any Claim for goods delivered to the Debtors within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to Section 503(b)(9) of the Bankruptcy Code.

1.12. "Allowed" means with respect to any Claim, or any portion of such Claim in any class or category specified herein, (a) any Claim for which a Proof of Claim has been timely filed on or before the applicable Claims Bar Date and to which no objection or request for estimation that has not been withdrawn or waived has been filed on or before any applicable deadline; (b) any Claim that is listed in the Schedules as not disputed, not contingent and not unliquidated, and for which no contrary or superseding Proof of Claim or request for estimation has been filed on or before any applicable deadline; (c) any Claim that is not the subject of an objection to allowance that (i) was filed on or before the Claims Objection Deadline and (ii) has not been settled, waived, withdrawn or denied pursuant to a Final Order; (d) any Claim Allowed pursuant to the Plan, a Final Order of the Bankruptcy Court (including pursuant to any stipulation approved by the Bankruptcy Court) or any agreement between the Holder of such Claim and the Debtors or the Reorganized Debtors, as applicable; and (e) any Claim that arises from the recovery of property under Sections 550 or 553 of the Bankruptcy Code and that is Allowed pursuant to Section 502(h) of the Bankruptcy Code.

1.13. "Allowed Claim" means any Claim or portion thereof, without duplication, that has been Allowed. Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court are not Allowed Claims.

1.14. "Avoidance Action" means, collectively, Causes of Action arising under sections 542, 543, 544, 545, 546, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under similar or related state or federal statutes or common law.

1.15. "Ballot" means each of the ballot forms distributed to each Holder of an Impaired Claim or Interest entitled to vote on the Plan upon which is to be indicated, among other things, acceptance or rejection of the Plan.

1.16. "Bank Agent" means Morgan Stanley Senior Funding, Inc., in its capacity as administrative and collateral agent under the First Lien Credit Agreement Documents.

1.17. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as now in effect or hereafter amended, applicable to these Chapter 11 Cases.

3

1.18.  "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Alabama, Southern Division in which the Chapter 11 Cases were filed or any other court having jurisdiction over the Chapter 11 Cases.

1.19.  "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, and local rules and standing orders of the Bankruptcy Court, as the context may require, as may be amended from time to time.

1.20.  "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.21.  "BWMC" means Black Warrior Methane Corporation.

1.22.  "BWTC" means Black Warrior Transmission Corporation.

1.23.  "Canada Holdings" means Walter Energy Canada Holdings, Inc.

1.24.  "Cash" means cash and cash equivalents, including bank deposits, checks and other similar items or instruments denominated in legal tender of the United States of America.

1.25.  "Cash Collateral Order" means, collectively, the (a) *Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) and (D) Granting Related Relief* [Docket No. 59] and (b) *Final Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) and (D) Granting Related Relief* [Docket No. ___].

1.26.  "Causes of Action" means any and all claims, counter claims, rights, actions, causes of action (including those assertable derivatively), demands, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, whether arising under the Bankruptcy Code or other federal, state or non-U.S. law, equity or otherwise, including, without limitation, any Avoidance Actions.

1.27.  "Chapter 11 Cases" means the Debtors' chapter 11 cases pending in the Bankruptcy Court, which are being jointly administered under Case No. 15-02741-TOM11.

1.28.  "Claim" means any claim, as such term is defined in Section 101(5) of the Bankruptcy Code, as supplemented by section 102(2) of the Bankruptcy Code, whether or not asserted.

1.29.  "Claims and Noticing Agent" means Kurtzman Carson Consultants LLC, employed by the Debtors as the official claims, noticing, and balloting agent in the Chapter 11

Cases pursuant to an order of the Bankruptcy Court entered on July 15, 2015 [Docket No. 55] or any successor thereto.

1.30. "Claims Bar Date" means, as applicable, (a) the date for all Persons, other than Governmental Units, asserting Claims against any of the Debtors by which to file Proofs of Claim on account of such Claims established by an order of the Bankruptcy Court, (b) the date for all Governmental Units asserting Claims against any of the Debtors by which to file Proofs of Claim on account of such Claims established by an order of the Bankruptcy Court, (c) the date that is thirty (30) days after the effective date of rejection of an Unexpired Lease or Executory Contract for Claims arising from such rejection if later than the otherwise applicable bar date in subsection (a) or (b) hereof, or (d) such other date specified in the Plan or as the Bankruptcy Court may order with respect to any Claim.

1.31. "Claims Objection Deadline" means the first Business Day that is one hundred twenty (120) days after the Effective Date, or such other later date the Court may establish upon a motion by the Reorganized Debtors, which motion may be approved without a hearing and without notice to any party.

1.32. "Class" means each category or group of Holders of Claims or Claims and Interests as designated under the Plan.

1.33. "Class 1 Claims" has the meaning set forth in Section 2.6 of the Plan.

1.34. "Class 2 Claims" has the meaning set forth in Section 2.7 of the Plan.

1.35. "Class 3 Claims" has the meaning set forth in Section 2.8 of the Plan.

1.36. "Class 4 Claims" has the meaning set forth in Section 2.9 of the Plan.

1.37. "Class 5 Claims" has the meaning set forth in Section 2.10 of the Plan.

1.38. "Class 6 Claims" has the meaning set forth in Section 2.11 of the Plan.

1.39. "Class 7 Claims" has the meaning set forth in Section 2.12. of the Plan.

1.40. "Class 8 Claims" and Interests has the meaning set forth in Section 2.12 of the Plan.

1.41. "Collateral" means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

1.42. "Collective Bargaining Agreement" means collectively, the collective bargaining agreements by and among certain of the Debtors and certain unions set forth in the Plan Supplement.

1.43. "Company" means the Debtors and Non-Debtor Subsidiaries.

1.44. "Confirmation" means "confirmation" as used in Section 1129 of the Bankruptcy Code.

1.45. "Confirmation Date" means the date on which the Confirmation Order is entered on the docket by the clerk of the Bankruptcy Court.

1.46. "Confirmation Hearing" means the hearing(s) at which the Bankruptcy Court considers Confirmation of the Plan.

1.47. "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code. The Confirmation Order shall be in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors.

1.48. "Consenting First Lien Creditors" means, collectively, the Consenting First Lien Revolving Lenders, Consenting First Lien Term Loan Lenders and Consenting First Lien Noteholders.

1.49. "Consenting First Lien Creditors' Advisors" means Akin Gump Strauss Hauer & Feld, LLP, as lead counsel, Burr Forman LLP, as Alabama counsel, Cassels Brock & Blackwell LLP, as Canadian counsel, Jackson Kelly LLP, as West Virginia counsel, Lazard Freres & Co. LLC, as financial advisor, and Stephen Douglas Williams Consulting LLC, as consultant.

1.50. "Consenting First Lien Noteholders" means those First Lien Noteholders that are signatories to the Restructuring Support Agreement, in their capacities as such.

1.51. "Consenting First Lien Revolving Lenders" means those First Lien Revolving Lenders that are signatories to the Restructuring Support Agreement, in their capacities as such.

1.52. "Consenting First Lien Term Loan Lenders" means those First Lien Term Loan Lenders that are signatories to the Restructuring Support Agreement, in their capacities as such.

1.53. "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed by the Bankruptcy Administrator for the Northern District of Alabama in the Chapter 11 Cases on July 30, 2015, as amended on August 4, 2015, and as may be reconstituted from time to time.

1.54. "Cure" means the payment or other honoring of all obligations required to be paid or honored in connection with the assumption of an Executory Contract or Unexpired Lease pursuant to Section 365 of the Bankruptcy Code, including (a) the cure of non-monetary defaults to the extent required, if at all, pursuant to Section 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the Distribution, within a reasonable period of time following the Effective Date, of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an Executory Contract or Unexpired Lease pursuant to Section 365 of the

Bankruptcy Code or Article V of the Plan, in an amount equal to all unpaid monetary obligations or such other amount as may be agreed upon by the parties under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

1.55. "Cure Notice" means a notice of a proposed Cure amount in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to Section 365 of the Bankruptcy Code.

1.56. "Debtors" means Walter Energy, Inc., Atlantic Development and Capital LLC, Atlantic Leaseco LLC, Blue Creek Coal Sales, Inc., Blue Creek Energy, Inc., J.W. Walter, Inc., Jefferson Warrior Railroad Company, Inc., Jim Walter Homes, LLC, Jim Walter Resources, Inc., Maple Coal Co. LLC, Sloss-Sheffield Steel & Iron Company, SP Machine, Inc., Taft Coal Sales & Associates, Inc., Tuscaloosa Resources, Inc., V Manufacturing Company, Walter Black Warrior Basin LLC, Walter Coke, Inc., Walter Energy Holdings, LLC, Walter Exploration & Production LLC, Walter Home Improvement, Inc., Walter Land Company, Walter Minerals, Inc., and Walter Natural Gas, LLC, in their capacity as debtors-in-possession in the Chapter 11 Cases pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

1.57. "Debtor Released Parties" means, collectively and individually, the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors and the Representatives of each of the foregoing.

1.58. "Dilution" means the dilution of New Walter Energy Common Stock resulting from additional New Walter Energy Common Stock issued pursuant to the Management Incentive Plan.

1.59. "Disbursing Agent" means any entity designated as such by the Debtors or the Reorganized Debtors which may receive and make Distributions. The Debtors or the Reorganized Debtors, as applicable, may serve as the Disbursing Agent.

1.60. "Disclosure Statement" means the disclosure statement with respect to the Plan approved by order of the Bankruptcy Court, as it may be amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof and the Restructuring Support Agreement, and the exhibits, schedules, attachments or appendices thereto. The Disclosure Statement shall be in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors.

1.61. "Disclosure Statement Order" means the order entered by the Bankruptcy Court approving the Disclosure Statement as containing adequate information under Section 1125 of the Bankruptcy Code and approving the solicitation of votes to accept or reject the Plan, including all exhibits, appendices and supplements thereto.

1.62. "Disputed Claim" means any Claim against a Debtor to the extent that (a) the allowance of such Claim or any portion thereof is the subject of an objection, appeal or motion to estimate that has been timely filed by a party in interest and which objection, appeal or motion has not been determined by a Final Order, (b) such Claim is scheduled by the Debtors in the Schedules as disputed, contingent and/or unliquidated and as to which no Proof of Claim was

7

timely or properly filed, (c) during the period prior to the deadline fixed by the Plan and/or the Bankruptcy Court for objecting to such Claim, such Claim is in excess of the amount scheduled as other than disputed, unliquidated or contingent, (d) such Claim is subject to Section 502(d) of the Bankruptcy Code; or (e) such Claim is not Allowed.

1.63.    "Disputed Claims Reserve" has the meaning set forth in Section 4.3(a) of the Plan.

1.64.    "Distribution" means any distribution of (a) Cash, (b) New Walter Energy Common Stock, or (c) some other form of consideration, as the case may be, made to Holders of Claims in accordance with and pursuant to the Plan.

1.65.    "DTC" means Depository Trust Company, and its assigns.

1.66.    "Effective Date" means the first Business Day upon which all of the conditions specified in Section 7.2 have been satisfied or waived in accordance with Section 7.3.

1.67.    "Estates" means the bankruptcy estates of the Debtors created in the Chapter 11 Cases pursuant to Section 541 of the Bankruptcy Code, individually or collectively, as is appropriate in the context.

1.68.    "Executory Contract" means any contract to which a Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

1.69.    "Exit Financing" means that certain financing arrangement to be entered into by the Reorganized Debtors on the Effective Date, which shall be in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors.

1.70.    "Exit Financing Commitment Agreements" means any commitments or agreements to be executed or delivered in connection with the Exit Financing, the material terms of which shall be included in the Plan Supplement, and all of which shall be in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors.

1.71.    "Face Amount" means respecting a Claim, the amount equal to the first of the following that is applicable:  (a) the amount fixed or estimated in an order of the Bankruptcy Court; (b) the liquidated amount set forth in a Proof of Claim; or (c) the amount of the Claim listed in the Schedules as liquidated or not contingent.  If none of the foregoing applies, the Face Amount of the Claim shall be zero ($0) dollars.

1.72.    "Fee Claims" means the Allowed Administrative Claims of Professionals.

1.73.    "Final Distribution Date" means a date selected by the Reorganized Debtors that is no later than ten (10) days (or such longer period as may be determined by the Reorganized Debtors) after the date on which all Disputed Claims have been resolved by Final Order.

1.74.    "Final Order" means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court (or such

8

other court) on the docket in the Chapter 11 Cases (or the docket of such other court), which has not been modified, amended, reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedures, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

1.75. "First Lien Credit Agreement" means that certain senior secured first lien Credit Agreement dated as of April 1, 2011 (as further amended, restated, amended and restated, supplemented or otherwise modified from time to time) by and among Walter Energy, as U.S. borrower, Western Coal Corp.[3] and Walter Energy Canada Holdings, Inc., as Canadian borrowers, the lenders from time to time parties thereto, and Morgan Stanley Senior Funding, Inc. as administrative and collateral agent, which provides for the issuance of the First Lien Revolving Obligations (including the Letters of Credit) and First Lien Term Loan.

1.76. "First Lien Credit Agreement Documents" means the First Lien Credit Agreement, all related guaranty, security and collateral agreements and documents, including, without limitation, (a) the First Lien Credit Agreement U.S. Guaranty and Collateral Agreement, (b) the Intercreditor Agreement, and (c) the First Lien Credit Agreement Canadian Guarantee and Collateral Agreement, and all exhibits, schedules and other ancillary documentation in respect thereof.

1.77. "First Lien Credit Agreement U.S. Guaranty and Collateral Agreement" means that certain U.S. Guaranty and Collateral Agreement dated as of April 1, 2011 (as further amended, restated, amended and restated, supplemented or otherwise modified from time to time) by and among Walter Energy, as U.S. borrower, the Walter Guarantors and Morgan Stanley Senior Funding Inc. as collateral agent for the lenders pursuant to the First Lien Credit Agreement.

1.78. "First Lien Credit Agreement Canadian Guarantee and Collateral Agreement" means that certain Canadian Guarantee and Collateral Agreement dated as of April 1, 2011 (as further amended, restated, amended and restated, supplemented or otherwise modified from time to time) by and among Canada Holdings and Western Coal Corp., as Canadian borrowers, the Walter Canada Guarantors and Morgan Stanley Senior Funding Inc. as collateral agent for the lenders pursuant to the First Lien Credit Agreement.

---

[3]  Western Coal Corp. was a Canadian borrower at the time of entry into the First Lien Credit Agreement and related documents.  In connection with a 2012 restructuring, substantially all of Western Coal Corp.'s assets were transferred to Walter Canadian Coal Partnership, and Western Coal Corp. was dissolved, with its remaining assets (including its partnership interest in Walter Canadian Coal Partnership) distributed to Walter Energy Canada Holdings, Inc.

9

1.79.  "First Lien Debt Claims" means, collectively, the First Lien Revolving Claims, First Lien Term Loan Claims and the First Lien Note Claims.

1.80.  "First Lien Deficiency Claim" means the unsecured portion of any First Lien Debt Claim to the extent that the value of any Collateral securing such First Lien Debt Claim is less than the amount of the interest of such First Lien Debt Claim in such Collateral as determined in accordance with Section 506 of the Bankruptcy Code.

1.81.  "First Lien Funded Revolving Claim" means any First Lien Revolving Claims other than First Lien Undrawn Revolving Claims.

1.82.  "First Lien Note Claim" means any Claim arising under or evidenced by the First Lien Note Documents.

1.83.  "First Lien Noteholders" means Holders of the First Lien Notes.

1.84.  "First Lien Notes" means those certain 9.500% Senior Secured Notes due 2019 issued under the First Lien Notes Indenture.

1.85.  "First Lien Notes Collateral Agreement" means that certain First Lien Notes Collateral Agreement dated as of September 27, 2013 (as further amended, supplemented or otherwise modified from time to time), by and among Walter Energy, the guarantors from time to time parties thereto and Wilmington Trust, National Association, as successor trustee and collateral agent to Union Bank, N.A.

1.86.  "First Lien Note Documents" means the First Lien Notes Indenture, First Lien Notes, all related guaranty, security and collateral agreements and documents, including, without limitation, the First Lien Notes Collateral Agreement, the Intercreditor Agreement, and all exhibits, schedules and other ancillary documentation in respect thereof.

1.87.  "First Lien Notes Indenture" means that certain Indenture dated as of September 27, 2013 for the 9.500% Senior Secured Notes due 2019 (as further amended, supplemented or otherwise modified from time to time) by and among Walter Energy, as issuer, the guarantors from time to time parties thereto, and Wilmington Trust, National Association, as successor trustee and collateral agent to Union Bank, N.A.

1.88.  "First Lien Notes Indenture Trustee" means Wilmington Trust, National Association, as successor trustee and collateral agent to Union Bank, N.A.

1.89.  "First Lien Other Debt Claims" means all First Lien Debt Claims other than First Lien Deficiency Claims and First Lien Undrawn Revolving Claims.

1.90.  "First Lien Revolving Claims" means any Claim (including any First Lien Funded Revolving Claim and any First Lien Undrawn Revolving Claim) related to the First Lien Revolving Obligations.

Case 15-02741-TOM7   Doc 566   Filed 08/26/15   Entered 08/26/15 16:50:48   Desc Main
Document      Page 13 of 62

1.91. "First Lien Revolving Lenders" means the lenders (including any issuing bank with respect to the Letters of Credit) from time to time party to the First Lien Credit Agreement, which are Holders of the First Lien Revolving Claims.

1.92. "First Lien Revolving Obligations" means the revolving loan and letter of credit indebtedness and other obligations outstanding under the First Lien Credit Agreement Documents relating to or arising from any revolving loans and letters of credit (including, without limitation, the aggregate amount available to be drawn under all outstanding Letters of Credit and any unreimbursed amounts related thereto), and for the avoidance of doubt, First Lien Revolving Obligations shall include any such revolving loan or Letter of Credit indebtedness incurred or issued for the benefit of any Non-Debtor Subsidiary under the First Lien Credit Agreement Documents.

1.93. "First Lien Secured Parties" means collectively the Bank Agent, the First Lien Revolving Lenders, the First Lien Term Loan Lenders, the First Lien Notes Indenture Trustee and the First Lien Noteholders.

1.94. "First Lien Stock Distribution" means the New Walter Energy Common Stock to be distributed on a Pro Rata basis to Holders of First Lien Other Debt Claims on the Effective Date, which First Lien Stock Distribution shall constitute [TBD]% of the New Walter Energy Common Stock and which shall be subject to Dilution.

1.95. "First Lien Term Loan" means the term loan indebtedness outstanding under the First Lien Credit Agreement Documents.

1.96. "First Lien Term Loan Claim" means any Claim arising under or evidenced by the First Lien Credit Agreement Documents relating to the First Lien Term Loan.

1.97. "First Lien Term Loan Lenders" means the lenders from time to time party to the First Lien Credit Agreement, which are Holders of First Lien Term Loan Claims.

1.98. "First Lien Undrawn Revolving Claim" means any Claim arising from or related to the outstanding letters of credit (including any Letter of Credit) issued under the First Lien Credit Agreement Documents that have not been drawn as of the Effective Date.

1.99. "Governmental Unit" has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

1.100. "Holder" means the holder of a Claim or Interest, as the context requires.

1.101. "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.102. "Indemnification Obligation" means any obligation of any of the Debtors to indemnify, reimburse, or provide contribution to persons who are directors, officers, managers, employees or agents of any of the Debtors pursuant to charter, bylaws, contract, or otherwise.

Case 15-02741-TOM7    Doc 566    Filed 08/26/15    Entered 08/26/15 16:50:48    Desc Main
Document    Page 14 of 62

1.103. "Indenture Trustees" means collectively, the Second Lien Notes Indenture Trustee and the Unsecured Notes Indenture Trustees.

1.104. "Initial Distribution" means the first Distribution that will be made to Holders of Allowed Claims on or as soon as practical after the Effective Date.

1.105. "Initial Distribution Date" means the first Business Day on or as soon as practicable following the Effective Date on which the Initial Distribution will be made.

1.106. "Insured Claim" means any Claim or portion of a Claim other than a Workers Compensation Claim that is insured under the Debtors' insurance policies, but only to the extent of such coverage.

1.107. "Intercompany Claim" means (a) any Claim held by one of the Debtors against any other Debtor or Non-Debtor Subsidiary, including, without limitation, (i) any account reflecting intercompany book entries by such Debtor with respect to any other Debtor or Non-Debtor Subsidiary, (ii) any Claim not reflected in book entries that is held by such Debtor, and (iii) any derivative Claim asserted or assertable by or on behalf of such Debtor against any other Debtor or Non-Debtor Subsidiary; or (b) any Claim held by any Non-Debtor Subsidiary against Walter Energy or any other Debtor or other Non-Debtor Subsidiary, including, without limitation, (i) any account reflecting intercompany book entries by such Non-Debtor Subsidiary and the Debtor or Non-Debtor Subsidiary with respect to any other Non-Debtor Subsidiary or Debtor or Non-Debtor Subsidiary, (ii) any Claim not reflected in book entries that is held by such Non-Debtor Subsidiary or Debtor, and (iii) any derivative Claim asserted or assertable by or on behalf of such Debtor or Non-Debtor Subsidiary against any other Debtor or Non-Debtor Subsidiary.

1.108. "Intercompany Interest" means any Interest held by Walter Energy in any of the other Debtors or Non-Debtor Subsidiaries, or held by any of the Debtors or Non-Debtor Subsidiaries in any other Debtor or Non-Debtor Subsidiary, or other investments in the form of Interests in non-debtor entities.

1.109. "Intercreditor Agreement" means that certain Amended and Restated Intercreditor Agreement dated as of March 27, 2014 (as amended, supplemented or otherwise modified from time to time) among Walter Energy, the other grantors from time to time party thereto, Morgan Stanley Senior Funding, Inc., as First-Lien Credit Agreement Collateral Agent and Authorized Representative for the Credit Agreement Secured Parties, Wilmington Trust, National Association (as successor to Union Bank, N.A.), as Initial Additional Collateral Agent and Initial Additional Authorized Representative for the Initial Additional First-Lien Secured Parties, BOKF, N.A. (as successor to Wilmington Trust, National Association), as Second-Lien Notes Collateral Agent and Second-Lien Notes Authorized Representative for the Second-Lien Notes Secured Parties, and each Additional Collateral Agent and Authorized Representative from time to time party thereto.

1.110. "Interest" means all rights (including unpaid dividends) arising from any equity security within the meaning of Section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in any of the Debtors or Non-Debtors, whether or

12

not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest.

1.111. "<u>Interim Distribution Date</u>" means any date after the Initial Distribution Date on which the Reorganized Debtors determine that an interim Distribution should be made in light of, *inter alia*, resolutions of Disputed Claims and the administrative costs of such a Distribution.

1.112. "<u>Letter of Credit</u>" means any letter of credit issued under the First Lien Credit Agreement prior to and outstanding as of the Petition Date.

1.113. "<u>Lien</u>" has the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.114. "<u>Management Incentive Plan</u>" means the post-Effective Date management incentive plan referenced in Section 6.11(g) of the Plan, the terms of which shall be determined by the board of directors of Reorganized Walter Energy.

1.115. "<u>New Organizational Documents</u>" means the amended and restated corporate charters, limited liability company agreements, certificates of formation, articles of incorporation, by-laws, shareholders agreements (or similar document), registration rights agreements or such other applicable organizational documents of some or all of the Reorganized Debtors, the forms of which shall be included in the Plan Supplement, and which shall be in form and substance acceptable to the Required Consenting First Lien Creditors.

1.116. "<u>New Walter Energy Common Stock</u>" means the new common stock of Reorganized Walter Energy that will be authorized and issued on the Effective Date or authorized to be issued by Reorganized Walter Energy at any time from and after the Effective Date, pursuant to Section 6.9(b) of the Plan.

1.117. "<u>Non-Debtor Subsidiary</u>" means each of 0541237 BC, Ltd., Belcourt Saxon Coal Limited Partnership, Belcourt Saxon Coal Ltd., Black Warrior Methane Corp., Black Warrior Transmission Corp., Brule Coal Partnership, Brule Coal ULC, Cambrian Energybuild Holdings ULC, Cardem Insurance Co. Ltd., Energybuild Group Limited, Energybuild Holdings Ltd., Energybuild Ltd., Energybuild Mining Ltd., Energybuild Opencast Ltd., Mineral Extraction and Handling Ltd., Pine Valley Coal Ltd., Walter Canadian Coal Partnership, Walter Energy Canada Holdings, Inc., Willow Creek Coal Partnership, Willow Creek Coal ULC, Wolverine Coal Partnership and Wolverine Coal ULC.

1.118. "<u>Old Common Stock</u>" means, collectively, (a) the common stock and any other Interest of any kind in Walter Energy issued and outstanding immediately prior to the Effective Date, (b) all options, warrants, conversion, privilege or other legal or contractual rights to acquire the common stock or other Interest of Walter Energy, and (c) any rights associated with the common stock or other Interest of any predecessor of Walter.

1.119. "<u>Old Common Stock Claim</u>" means any Claim with respect to Old Common Stock or an Interest in Walter Energy, including any Claim arising from the rescission of a purchase or sale of a security of or Old Common Stock or Interest in Walter Energy, for

damages arising from the purchase or sale of such a security or Old Common Stock or Interest, or for reimbursement, contribution or indemnification allowed under Section 502 of the Bankruptcy Code on account of such a Claim, and any other Claim subject to subordination under Section 510(b) of the Bankruptcy Code.

1.120. "OPEB Claim" means any Claim arising from or related to the termination, modification or reduction of any of the Debtors' Retiree Benefits.

1.121. "Ordinary Course Professionals Order" means that order of the Bankruptcy Court authorizing the Debtors to retain, employ and compensate certain Professionals in the ordinary course of business.

1.122. "Other Priority Claim" means a Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code (other than an Administrative Claim, Fee Claim or Priority Tax Claim), including, without limitation, certain allowable employee compensation and benefit Claims of the Debtors' employees incurred within one hundred eighty (180) days prior to the Petition Date.

1.123. "Other Secured Claims" means any Secured Claim other than the First Lien Debt Claims and Second Lien Note Claims.

1.124. "Person" shall have the meaning set forth in Section 101(41) of the Bankruptcy Code.

1.125. "Petition Date" means July 15, 2015, the date on which the Debtors commenced the Chapter 11 Cases.

1.126. "Plan" means this joint plan of reorganization (as it may be amended, supplemented or modified from time to time), including the Plan Supplement, which is incorporated herein by reference and made part of the Plan as if set forth herein, in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors.

1.127. "Plan Supplement" means the compilation of documents, forms and drafts of documents, schedules, exhibits to the Plan and other materials (including the Plan Supplement Documents) that will be filed by the Debtors by the Plan Supplement Filing Date as contemplated by the Plan, as the same may be amended or supplemented from time to time, and that shall be in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors; provided, however, that the New Organizational Documents shall be acceptable only to the Required Consenting First Lien Creditors.

1.128. "Plan Supplement Documents" means the documents, forms and drafts of documents, term sheets and instruments (including any amendments, supplements or modifications thereto) included in the Plan Supplement and which shall be executed, delivered, and/or performed in connection with the consummation of the Plan and shall include the documents listed on the page of the Plan entitled "Plan Supplement".

Case 15-02741-TOM7    Doc 566    Filed 08/26/15    Entered 08/26/15 16:50:48    Desc Main
Document    Page 17 of 62

1.129. "Plan Supplement Filing Date" means the date(s) on which the Plan Supplement shall be filed with the Bankruptcy Court, which date(s) shall be no later than ten (10) days prior to the Voting Deadline.

1.130. "Prepetition Secured Parties" means collectively, the First Lien Secured Parties, the Second Lien Noteholders and the Second Lien Notes Indenture Trustee.

1.131. "Priority Tax Claim" means any unsecured Claim that is entitled to a priority in right of payment under Section 507(a)(8) of the Bankruptcy Code.

1.132. "Pro Rata Share" means, with respect to any Allowed Claim, at any time, the proportion that the amount of such Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class, unless the Plan specifically provides otherwise.

1.133. "Professional" means any professional employed in the Chapter 11 Cases pursuant to Sections 327, 328, 329, 330, 331, 363 or 1103 of the Bankruptcy Code.

1.134. "Proof of Claim" means a proof of claim filed against any Debtor on or before the applicable Claims Bar Date or as otherwise permitted by the Bankruptcy Court or agreed to by the Debtors (as such Proof of Claim may be amended from time to time with authorization from the Bankruptcy Court or as agreed to by the Debtors).

1.135. "Record Date" means, (a) for purposes of casting Ballots, [DATE], and (b) for purposes of making Distributions under the Plan on account of Allowed Claims, the Effective Date.

1.136. "Record Holder" means the Holder of a Claim as of the Record Date.

1.137. "Released Parties" means, collectively and individually, the members of the Creditors Committee, the members of the Section 1114 Committee, the Bank Agent, the Consenting First Lien Creditors, the First Lien Notes Indenture Trustee, the First Lien Term Loan Lenders, the First Lien Revolving Lenders, the First Lien Noteholders and the Representatives of each of the foregoing (in each case, solely in their capacities as such).

1.138. "Reorganized Debtors" means, collectively, all of the surviving Debtors that are reorganized under and pursuant to the Plan, on and after the Effective Date.

1.139. "Reorganized Walter Energy" means Walter Energy, as reorganized under and pursuant to the Plan, on and after the Effective Date.

1.140. "Representatives" means, with respect to any Person, any successor, assign, predecessor, officer, director, principal, partner, limited partner, general partner, shareholder, member, manager, management company, investment manager, affiliate, employee, agent, attorney, advisor, investment banker, financial advisor, restructuring advisor, consultant, accountant or other Professional of such entity or any of the foregoing.

1.141. "Required Consenting First Lien Creditors" means Consenting First Lien Creditors holding 55% or more in principal amount of the First Lien Debt Claims held by the

15

Consenting First Lien Creditors as of the time of such determination; provided that such Consenting First Lien Creditors holding 55% or more in principal amount include at least four (4) unaffiliated Consenting First Lien Creditors and provided further that with respect to approval of (X) any provisions of the Restructuring Documents (as defined in the Restructuring Support Agreement) dealing with the corporate governance of the Debtors from and after the Effective Date or of documents relating to the corporate governance of the purchaser from and after the consummation of the 363 Sale (as defined in the Restructuring Support Agreement), including but not limited to board composition, affiliate and/or related party transaction limitations/protections, voting rights, pre-emptive rights, tag-along/drag-along rights and transfer restrictions or (Y) any financing(s) or funding(s) (whether debt or equity) obtained or arranged for (in whole or in part) by the Debtors in the form of debtor-in-possession or similar financing(s), or by the Reorganized Debtors or purchaser in the 363 Sale prior to, upon or in connection with the closing of a Restructuring (as defined in the Restructuring Support Agreement), then in any case of (X) or (Y) the Required Consenting First Lien Creditors shall include 55% or more in principal amount of the First Lien Debt Claims held by the Consenting First Lien Creditors as of the time of such determination and at least four (4) unaffiliated Consenting First Lien Creditors (which must also include at least three (3) unaffiliated Consenting First Lien Creditors who are Initial Holders (as defined in the Restructuring Support Agreement)).

1.142. "Restructuring Support Agreement" means that certain Restructuring Support Agreement dated as of July 15, 2015, entered into by and among Walter Energy, on behalf of itself and the other Debtors, and the Consenting First Lien Creditors, pursuant to which such parties have agreed to, among other things, support the Plan, subject to the terms and conditions specified therein.

1.143. "Restructuring Transactions" has the meaning assigned to such term in Section 6.11(e) of the Plan.

1.144. "Retained Causes of Action" has the meaning assigned to such term in Section 8.7 of the Plan.

1.145. "Retiree Benefits" has the meaning assigned to such term in Section 1114(a) of the Bankruptcy Code.

1.146. "Retiree Group" means (a) retirees of the Debtors who were represented by the UMWA when employed by the Debtors, (b) retirees of the Debtors who were represented by the USW when employed by the Debtors, or (c) retirees of the Debtors who were not represented by the UMWA or USW when employed by the Debtors.

1.147. "Schedules" means the Schedules of Assets and Liabilities to be filed in the Chapter 11 Cases, as amended, revised or modified from time-to-time.

1.148. "Second Lien Deficiency Claim" means the unsecured portion of any Second Lien Notes Claim to the extent that the value of any Collateral securing such Second Lien Notes Claim is less than the amount of the interest of such Second Lien Notes Claim in such Collateral as determined in accordance with Section 506 of the Bankruptcy Code.

16

1.149. "Second Lien Note Claim" means any Claim arising under or evidenced by the Second Lien Note Documents.

1.150. "Second Lien Notes" means those 11.0%/12.0% Senior Secured Second Lien PIK Toggle Notes issued under the Second Lien Notes Indenture.

1.151. "Second Lien Notes Collateral Agreement" means that certain Second Lien Notes Collateral Agreement dated as of March 27, 2014 (as further amended, supplemented or otherwise modified from time to time), among Walter Energy, the guarantors from time to time parties thereto and BOKF, N.A. as successor collateral agent to Wilmington Trust, National Association.

1.152. "Second Lien Note Documents" means the Second Lien Notes Indenture, Second Lien Notes, all related guaranty, security and collateral agreements, including, without limitation, the Second Lien Notes Collateral Agreement, the Intercreditor Agreement, and all exhibits, schedules and other ancillary documentation in respect thereof.

1.153. "Second Lien Notes Indenture" means that certain Indenture dated as of March 27, 2014 for the 11.0%/12.0% Senior Secured Second Lien PIK Toggle Notes due 2020 (as further amended, supplemented or otherwise modified from time to time), among Walter Energy, Inc., as issuer, the guarantors from time to time parties thereto, and BOKF, N.A. as successor trustee and collateral agent to Wilmington Trust, National Association.

1.154. "Second Lien Notes Indenture Trustee" means BOKF, N.A., as successor collateral agent to Wilmington Trust, National Association, and any successor thereto.

1.155. "Second Lien Noteholders" means collectively, the Holders of Second Lien Note Claims.

1.156. "Section 1114 Committee" means the official committee of retirees appointed pursuant to an order of the Bankruptcy Court under Section 1114 of the Bankruptcy Code.

1.157. "Secured Claim" means any Claim that constitutes a secured Claim under Sections 506(a) or 1111(b) of the Bankruptcy Code.

1.158. "Servicer" means the Bank Agent, the First Lien Notes Indenture Trustee, the Indenture Trustees, and any other agent, servicer or other authorized representative of Holders of Claims or Interests recognized by the Debtors or the Reorganized Debtors.

1.159. "UMWA" means the United Mine Workers of America.

1.160. "Unclaimed Property" means any Distribution under the Plan that is unclaimed by the Holder of the Allowed Claim entitled to such Distribution ninety (90) days after the Distribution date applicable to such Distribution.

Case 15-02741-TOM7    Doc 566    Filed 08/26/15    Entered 08/26/15 16:50:48    Desc Main
Document    Page 20 of 62

1.161. "Unexpired Lease" means a lease of nonresidential real property to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.162. "Unimpaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.163. "Unsecured Claim" means a Claim against any of the Debtors that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Fee Claim, First Lien Other Debt Claim, First Lien Undrawn Revolving Claim, Second Lien Note Claim other than the Second Lien Deficiency Claim, Other Secured Claim, Intercompany Claim, or Old Common Stock Claim.

1.164. "Unsecured Note Claims" means collectively, the 9.875% Unsecured Note Claims and the 8.500% Unsecured Note Claims.

1.165. "Unsecured Noteholders" means collectively, the Holders of Unsecured Note Claims.

1.166. "Unsecured Note Indentures" means collectively the 8.500% Notes Indenture and the 9.875% Notes Indenture.

1.167. "Unsecured Note Indenture Trustees" means collectively the 8.500% Notes Indenture Trustee and the 9.875% Notes Indenture Trustee.

1.168. "USW" means the United Steelworkers.

1.169. "Voting Deadline" means December 16, 2015 at 4:00 pm (prevailing Central Time).

1.170. "Walter Energy" means Walter Energy, Inc.

1.171. "Walter Guarantors" means collectively, the following Debtors who are guarantors of the First Lien Debt Claims, the Second Lien Note Claims and the Unsecured Note Claims: Walter Energy Holdings, LLC; Walter Natural Gas, LLC; Walter Exploration and Production LLC; Walter Black Warrior Basin LLC; Walter Coke, Inc.; Walter Minerals; Tuscaloosa Resources, Inc.; Taft Coal Sales & Associates, Inc.; Jim Walter Resources, Inc.; Atlantic Development and Capital LLC; Atlantic Leaseco, LLC; Maple Coal Co. LLC; Blue Creek Coal Sales, Inc.; J.W. Walter, Inc.; and Walter Land Company.

1.172. "Workers Compensation Claim" means a Claim held by a current or former employee of the Debtors for workers' compensation insurance coverage under the workers' compensation laws applicable in the particular state in which the employee is or was employed by the Debtors.

       **B.**       **Interpretation, Application of Definitions and Rules of Construction.**
Except as provided herein, each term used in the Plan shall either have the meaning ascribed to

18

such term in Article I or, if not defined therein, the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules, as applicable. Capitalized terms shall be applicable to both the singular and plural forms of the terms defined. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of the Plan, and shall not be used to interpret the Plan. Any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented from time to time. All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided. Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires. The rules of construction set forth in Section 102 of the Bankruptcy Code (except for Section 102(5)) and the Bankruptcy Rules shall apply to the Plan.

        **C.**     **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

        **A.**     **Introduction.**

        2.1.     <u>Classification</u>. Pursuant to Sections 1122 and 1123 of the Bankruptcy Code, the following designates the Classes of Claims and Interests under the Plan. A Claim or Interest is in a particular Class for purposes of voting on, and of receiving Distributions pursuant to, the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. All Claims and Interests, except Administrative Claims, Priority Tax Claims and Fee Claims, are placed in the Classes set forth below. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and Fee Claims have not been classified and the treatment of such Claims is set forth in Section B below.

        2.2.     <u>Separate Plans</u>. The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only. The Plan is not premised upon

the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

2.3.    Summary Table.  A summary of the Classes of Claims is set forth in the following table:[4]

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | First Lien Undrawn Revolving Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | First Lien Other Debt Claims | Impaired | Entitled to Vote |
| Class 3 | Second Lien Note Claims | Impaired | [TBD] |
| Class 4 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 5 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 6 | Unsecured Claims | Impaired | [TBD] |
| Class 7 | Intercompany Claims and Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 8 | Old Common Stock Claims and Old Common Stock | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.    Treatment of Unclassified Claims.**

2.4.    Administrative Claims.

(a)    Administrative Claims in General.  Except with respect to Administrative Claims that are Fee Claims or Priority Tax Claims, and unless a Holder of an Allowed Administrative Claim (including a Claim arising under Section 503(b)(9) of the Bankruptcy Code that has not been paid pursuant to a motion filed with the Bankruptcy Court) and the Debtors agree to a less favorable treatment, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction of such Administrative Claim, Cash equal to the Allowed amount of such Administrative Claim on the later to occur of (i) the Initial Distribution Date under the Plan, (ii) the date such Administrative Claim is Allowed, or as soon thereafter as is practicable, (ii) the date such Allowed Administrative Expense Claim becomes due and payable, or (iv) on such other date as the Bankruptcy Court may order or to which the Debtors (or the Reorganized Debtors) and the Holder of such Administrative Claim may agree; provided, however, that Allowed Administrative Claims that arise in the ordinary course of the Debtors' business, including Administrative Claims arising from or with respect to the sale of goods or services on or after the Petition Date, Executory Contracts and Unexpired Leases, and all Administrative Claims that are Intercompany Claims, shall be paid or otherwise satisfied in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions,

---

[4]    The table is for informational purposes only and is qualified in its entirety by Sections 2.6-2.14 of the Plan.

without further action by the Holders of such Administrative Claims or further approval by the Bankruptcy Court.

(b)    <u>Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date shall be paid by the applicable Reorganized Debtor in accordance therewith until the earlier of the conversion or dismissal of the applicable Chapter 11 Case under Section 1112 of the Bankruptcy Code or the closing of the applicable Chapter 11 Case pursuant to Section 350(a) of the Bankruptcy Code.

(c)    <u>Pre-Effective Date Professional Fee and Expense Claims</u>.  All final requests for payment of Fee Claims must be filed with the Bankruptcy Court and served on the Reorganized Debtors and the Office of the Bankruptcy Administrator for the Northern District of Alabama no later than sixty (60) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court, the Allowed amounts of such Fee Claims shall be determined by the Bankruptcy Court; <u>provided</u>, <u>however</u>, that any party who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order without further Bankruptcy Court review or approval (except as otherwise provided in the Ordinary Course Professionals Order).  Objections to any Fee Claim must be filed and served on the Reorganized Debtors and the requesting party no later than ninety (90) days after the Effective Date.

(d)    <u>Post-Effective Date Professionals' Fee and Expense Claims</u>.  Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented fees and expenses of the Professionals on or after the Effective Date, in each case, related to implementation and consummation of the Plan.  Upon the Effective Date, any requirement that Professionals comply with Sections 327 through 331 and 1103 of the Bankruptcy Code or any order of the Bankruptcy Court entered before the Effective Date governing the retention of, or compensation for services rendered by, Professionals after the Effective Date shall terminate, and the Reorganized Debtors may employ or pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

(e)    <u>Bar Date for Administrative Claims</u>.  Except as otherwise provided herein, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order no later than thirty (30) days after the Effective Date.  Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be filed and served on the Reorganized Debtors and the requesting party no later than sixty (60) days after the Effective Date.

2.5.    Priority Tax Claims.  Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors agree to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtors, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Priority Tax Claim, either: (i) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Initial Distribution Date and the date such Claim becomes an Allowed Claim (or as soon thereafter as is practicable); (ii) through equal annual installment payments in Cash, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, over a period ending not later than five (5) years after the Petition Date; or (iii) treatment in a manner not less favorable than the most favored nonpriority Unsecured Claim provided for by the Plan.

## C.    **Classified Claims and Interests**.

2.6.    Class 1 – First Lien Undrawn Revolving Claims.

(a)    Classification.    Class 1 consists of all First Lien Undrawn Revolving Claims.

(b)    Treatment.  The First Lien Undrawn Revolving Claims shall be Allowed in the aggregate amount of US$50,688,432.80 and C$24,070,494.00 less the aggregate amount of any Letters of Credit that have been drawn after the Petition Date and prior to the Effective Date.

In full and final satisfaction, settlement, release and discharge of each First Lien Undrawn Revolving Claim, each Holder of an Allowed First Lien Undrawn Revolving Claim shall have its Allowed First Lien Undrawn Revolving Claim either (x) if such Holder consents, reinstated in its Face Amount as part of a letter of credit facility under the Exit Financing, and the First Lien Undrawn Revolving Claim commitments related thereto (if any) shall be canceled on the Effective Date, or (y)  replaced in full by letters of credit issued under the Exit Financing or issued by a bank that is not part of the Exit Financing, and the Letters of Credit related to such First Lien Undrawn Revolving Claims shall be canceled; provided that, for the avoidance of doubt, if the relevant issuing bank of any Letter of Credit does not agree to reinstate (or roll-over) such Letter of Credit as part of a new letter of credit facility (including the Exit Financing), such Letter of Credit shall be cancelled and replaced.

(c)    Impairment and Voting.  Class 1 Claims are Unimpaired under the Plan.  Holders of Allowed First Lien Undrawn Revolving Claims in Class 1 are presumed to accept the Plan and are not entitled to vote to accept or reject the Plan

2.7.    Class 2 – First Lien Other Debt Claims.

(a)    Classification.    Class 2 consists of all First Lien Other Debt Claims.

(b)    Treatment.  First Lien Other Debt Claims shall be Allowed in the aggregate amount of $1,979,708,980.25 plus the amount of any First Lien Funded Revolving Claims, plus, to the extent the following are payable in accordance with the First Lien Credit Agreement Documents and First Lien Note Documents, fees (including any prepayment fees),

22

expenses, penalties, premiums and other obligations incurred in connection with First Lien Debt Claims.

Each Holder of an Allowed First Lien Other Debt Claim shall receive, on the Effective Date, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed First Lien Other Debt Claim, its Pro Rata Share of the First Lien Stock Distribution, subject to Dilution.

Immediately upon the Effective Date, except as otherwise provided in Sections 6.3 and 6.7, the First Lien Other Debt Claims shall be cancelled and extinguished, and all Liens, encumbrances and security interests securing such First Lien Other Debt Claims shall be released and forever discharged, without limitation, and without any further action by any party.

(c)     Impairment and Voting.  Class 2 Claims are Impaired under the Plan.  Holders of Allowed First Lien Other Debt Claims in Class 2 are entitled to vote to accept or reject the Plan.

2.8.     Class 3 – Second Lien Note Claims.

(a)     Classification.  Class 3 consists of all Second Lien Note Claims.

(b)     Treatment.  Second Lien Note Claims shall be allowed in the aggregate principal amount of $360,500,000.00, plus accrued and unpaid interest of $11,976,611, plus, to the extent the following are payable in accordance with the Second Lien Note Documents, fees (including any prepayment fees), expenses, penalties, premiums and other obligations incurred in connection with Second Lien Note Claims.  Treatment [TBD].

Immediately upon the Effective Date, Second Lien Note Claims shall be discharged and cancelled and all Liens, encumbrances and security interests securing such Second Lien Note Claims shall be released and forever discharged, without limitation, and without any further action by any party.

(c)     Impairment and Voting.  Class 3 Claims are Impaired under the Plan.

2.9.     Class 4 – Other Secured Claims.

(a)     Classification.  Class 4 consists of all Other Secured Claims.

(b)     Treatment.  Except to the extent that a Holder of an Allowed Other Secured Claim agrees with the Debtors, which agreement shall be subject to the consent of the Required Consenting First Lien Creditors, or the Reorganized Debtors, in writing to less favorable treatment, in full and final satisfaction, settlement release and discharge of, and in exchange for, such Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall either (i) be reinstated and rendered Unimpaired in accordance with Section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured

Claim from and after the occurrence of a default, (ii) receive Cash in an amount equal to such Allowed Other Secured Claim as determined in accordance with Section 506(a) of the Bankruptcy Code, on the later of (A) the Initial Distribution Date and (B) thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim (or as soon thereafter as is practicable), or (iii) receive the Collateral securing its Allowed Other Secured Claim on the later of (A) the Initial Distribution Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim (or as soon thereafter as is practicable), in each case as determined by the Debtors and consented to by the Required Consenting First Lien Creditors.

Although all Other Secured Claims have been placed into Class 4 for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any Other Secured Claim, shall be treated as being in a separate sub-Class for the purpose of receiving Distributions under the Plan.

(c)     <u>Impairment and Voting</u>.  Class 4 Claims are Unimpaired under the Plan.  Holders of Allowed Other Secured Claims in Class 4 are presumed to accept the Plan and are not entitled to vote to accept or reject the Plan.

2.10.    <u>Class 5 – Other Priority Claims</u>.

(a)     <u>Classification</u>.  Class 5 consists of all Other Priority Claims.

(b)     <u>Treatment</u>. Except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors agree to less favorable treatment, in full and final satisfaction, settlement release and discharge of, and in exchange for, such Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall be paid in full in Cash on (i) the later of the Initial Distribution Date and (ii) thirty (30) days after the date on which such Other Priority Claim becomes an Allowed Other Priority Claim; <u>provided</u>, <u>however</u>, that Other Priority Claims that arise in the ordinary course of the Debtors' business and are not due and payable on or before the Effective Date shall be paid in such ordinary course of business in accordance with the terms thereof.

(c)     <u>Impairment and Voting</u>.  Class 5 Claims are Unimpaired under the Plan.  Holders of Allowed Other Priority Claims in Class 5 are presumed to accept the Plan and are not entitled to vote to accept or reject the Plan.

2.11.    <u>Class 6 – Unsecured Claims</u>

(a)     <u>Classification</u>.    Class 6 consists of all Unsecured Claims, including, without limitation, Unsecured Note Claims, First Lien Deficiency Claims, Second Lien Deficiency Claims, OPEB Claims, if applicable, claims arising from the Company's withdrawal from the UMWA 1974 Multiemployer Pension Plan, any other unsecured labor-related claims and unsecured trade claims.

(b)     <u>Treatment</u>.  [TBD.]

Immediately upon the Effective Date, the Unsecured Claims shall be discharged and cancelled and shall be of no force and effect.

24

(c)    <u>Impairment and Voting</u>.  Class 6 Claims are Impaired under the Plan.

2.12.  <u>Class 7 – Intercompany Claims and Intercompany Interests</u>.

(a)    <u>Classification</u>.  Class 7 consists of all Intercompany Claims and Intercompany Interests.

(b)    <u>Treatment</u>.  Except as otherwise provided in the Plan or the Restructuring Support Agreement, on the Effective Date, each Intercompany Claim and Intercompany Interest shall, at the option of the Reorganized Debtors, be either (i) reinstated, (ii) released, waived, and discharged, (iii) treated as a dividend, or (iv) contributed to capital or exchanged for equity of a subsidiary of Walter Energy.

(c)    <u>Impairment and Voting</u>.  Class 7 Claims and Interests are Unimpaired under the Plan.  Holders of Intercompany Claims and Intercompany Interests are presumed to have accepted the Plan and will not be entitled to vote to accept or reject the Plan.

2.13.  <u>Class 8 – Old Common Stock Claims and Old Common Stock</u>.

(a)    <u>Classification</u>.  Class 8 consists of all Old Common Stock Claims and Old Common Stock.

(b)    <u>Treatment</u>.  Holders of Old Common Stock Claims and Old Common Stock shall not receive any Distribution under the Plan on account of such Old Common Stock Claims and Old Common Stock.  On the Effective Date, Old Common Stock Claims and Old Common Stock shall be discharged, cancelled and extinguished and shall be of no further force and effect.

(c)    <u>Impairment and Voting</u>.  Class 8 Claims and Interests are Impaired under the Plan.  Holders of Old Common Stock Claims and Old Common Stock are presumed to reject the Plan and are not entitled to vote to accept or reject the Plan.

2.14.  <u>Enforcement of Subordination Provisions</u>.  In accordance with and pursuant to Section 510(a) of the Bankruptcy Code and the Intercreditor Agreement, all Distributions to Holders of Second Lien Debt Claims and Second Lien Deficiency Claims under this Plan shall be made directly to Holders of First Lien Debt Claims in accordance with and subject to the Intercreditor Agreement until all First Lien Debt Claims are paid in full in Cash, and only thereafter to Holders of Second Lien Note Claims and Second Lien Deficiency Claims.

**ARTICLE III**
**VOTING AND DISTRIBUTIONS**

3.1.  <u>Voting of Claims</u>.  Each Holder or beneficial Holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan pursuant to Article II of the Plan shall be entitled to vote separately to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and

Case 15-02741-TOM7   Doc 566   Filed 08/26/15   Entered 08/26/15 16:50:48   Desc Main
Document    Page 28 of 62

tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

(a) <u>Non-Consensual Confirmation</u>. Since there is at least one (1) Class of Claims or Interests that is deemed to reject the Plan, the Debtors hereby seek to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code.

(b) <u>Deemed Acceptance if No Votes Cast</u>. If no Holders of Claims or Interests eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims or Interests in such Class.

(c) <u>Elimination of Vacant Classes</u>. Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

3.2. <u>Designation of Reorganized Debtors to Make Distributions</u>.

(a) <u>Distributions by the Reorganized Debtors</u>. The Reorganized Debtors or any Disbursing Agent acting on their behalf shall make all Distributions required to be made under the Plan, <u>provided</u> <u>however</u>, that with respect to any Holder of a Claim whose Claim is governed by an agreement and is administered by a Servicer, such Distributions shall be deposited with or made to the appropriate Servicer, as applicable, who shall act as Disbursing Agent and deliver such Distributions to the Holders of such Claims in accordance with the provisions of the Plan and the terms of any governing agreement; <u>provided</u>, <u>further</u>, that the Bank Agent and the First Lien Notes Indenture Trustee shall not have any obligation to act as a Disbursing Agent with respect to any Distributions in the form of equity interests (including the disbursement of any New Walter Energy Common Stock). No Disbursing Agent or Servicer shall be required to give any bond or surety or other security for the performance of its duties.

(b) <u>The Rights and Powers of the Reorganized Debtors</u>. The Reorganized Debtors shall (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform their duties under the Plan and the Plan Supplement Documents, (ii) make all applicable Distributions or payments contemplated hereby and thereto, (iii) be empowered to employ professionals to represent them with respect to their responsibilities and (iv) be empowered to exercise such other powers as may be vested in the Reorganized Debtors by order of the Bankruptcy Court (including any order issued after the Effective Date), pursuant to the Plan, or as deemed by the Reorganized Debtors to be necessary and proper to implement the provisions hereof.

(c) <u>Expenses Incurred by the Disbursing Agent and Servicers</u>. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent and each Servicer that is delivering Distributions hereunder, on or after the Effective Date (including, without limitation, reasonable

26

attorney and other professional fees and expenses), shall be paid in Cash by the Reorganized Debtors without the need for application to or further order of the Bankruptcy Court.

### 3.3. Distributions on Account of Claims Allowed as of the Effective Date.

(a) Delivery of Distributions in General. Except as otherwise provided in the Plan, a Final Order, or as otherwise agreed to by the relevant parties, the Disbursing Agent shall make the Initial Distribution on the Initial Distribution Date to Holders of Allowed Claims and subsequent Distributions (if any) on Interim Distribution Dates and the Final Distribution Date, as applicable.

(b) Delivery of Distributions to Servicers. In the case of Holders of Claims whose Claims are governed by an agreement and administered by a Servicer, the respective Servicer shall be deemed to be the Holder of such Claims for purposes of receiving Distributions from the Disbursing Agent under the Plan. Subject to the second proviso in Section 3.2(a) above, the Disbursing Agent shall make all Distributions on account of such Claims to the Servicers or as directed by the Servicers. The Servicers shall hold or direct such Distributions for the benefit of Holders of such Allowed Claims, as applicable; provided however, each Servicer shall retain all rights under its respective agreement in connection with delivery of Distributions to Holders of such Claims; and provided further, however, that the Debtors' obligations to make Distributions in accordance with the Plan shall be deemed satisfied upon delivery of Distributions to each Servicer or the entity or entities designated by the Servicers.

### 3.4. Miscellaneous Distribution Provisions.

(a) Record Date. All Distributions on account of Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business of the Record Date, the Claims register maintained by the Claims and Noticing Agent shall be closed, and there shall be no further changes regarding the Record Holder of any Claim. The Reorganized Debtors, the Servicers and any Disbursing Agents shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. The Reorganized Debtors, the Servicers, and any Disbursing Agents shall instead be entitled to recognize and deal for all purposes under the Plan solely with the Record Holders. Notwithstanding the foregoing, if a Claim or Interest, other than one based on a publicly traded certificate, is transferred less than 20 days before the Effective Date, the Disbursing Agent shall make Distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor. As of the close of business on the Record Date, the transfer ledgers for the Servicers shall be deemed closed, and the Servicers may take whatever action is necessary to close the transfer ledgers and there shall be no further transfers or changes in the Record Holders of such securities in such transfer ledgers; provided that the Record Date shall not apply to any Distributions made through Cede & Co. PLEASE NOTE THAT IF YOU ACQUIRE A CLAIM FOLLOWING THE RECORD DATE, YOU WILL NOT RECEIVE A DISTRIBUTION FROM THE DEBTORS OR THE REORGANIZED DEBTORS ON ACCOUNT OF SUCH CLAIM. IN ADDITION, IF YOU SELL OR TRANSFER YOUR CLAIM BEFORE THE RECORD DATE, YOU WILL NOT RECEIVE A DISTRIBUTION ON ACCOUNT OF SUCH CLAIM.

27

(b)     Delivery of Distributions.  Distributions to Holders of Allowed Claims shall be made by the Disbursing Agent or the appropriate Servicers, as applicable, (i) at the addresses set forth on the Proof of Claim filed by such Holders of Claims or at the last known addresses of such Holders of Claims if no Proof of Claim is filed or if the Debtor has been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim, (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address, or (iv) in the case of a Holder of a Claim whose Claim is governed by an agreement and administered by a Servicer, at the addresses contained in the official records of such Servicer.  The Debtor, the Reorganized Debtor, any Servicer and the Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any Distributions under the Plan.

(c)     Undeliverable Distributions.  If any Distribution to a Holder of a Claim is returned as undeliverable, no further Distributions to such Holder of such Claim shall be made unless and until the Disbursing Agent or the appropriate Servicer is notified of the then-current address of such Holder of the Claim, at which time all missed Distributions shall be made to such Holder of the Claim without interest, dividends, or accruals of any kind on the next Interim Distribution Date.  Amounts in respect of undeliverable Distributions shall be returned to the Reorganized Debtor until such Distributions are claimed or become Unclaimed Property.

(d)     No Interest.  Except as specifically provided for in the Plan, no Claims (including Administrative Claims), Allowed or otherwise, shall be entitled, under any circumstances, to receive any interest on such Claim under the Plan.

(e)     Foreign Currency Exchange Rate.  Except as specifically provided for in the Plan or an order of the Bankruptcy Court, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the then applicable noon spot rate for such non-U.S. currency as of the Petition Date for all purposes under the Plan, including voting, allowance and distribution.

(f)     Fractional Plan Securities and De Minimis Distributions. Notwithstanding any other provision of the Plan, only whole numbers of shares of New Walter Energy Common Stock shall be issued.  When any Distribution on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Walter Energy Common Stock that is not a whole number, the actual Distribution of such shares shall be rounded to the next higher or lower whole number of shares as follows:  (i) fractions equal to or greater than one-half (½) shall be rounded to the next higher whole number; and (ii) fractions less than one-half (½) shall be rounded to the next lower number.  No consideration shall be provided in lieu of fractional shares that are rounded down.

The Debtors or the Reorganized Debtors, as the case may be, shall not be required to, but may in their sole and absolute discretion, make Cash Distributions to any Holder of a Claim in an amount less than $25.  In addition, the Debtors and the Reorganized Debtors shall not be required to, but may in their sole and absolute discretion, make any payment on account of any Claim in the event that the costs of making such payment exceeds the amount of such payment.

Case 15-02741-TOM7    Doc 566    Filed 08/26/15    Entered 08/26/15 16:50:48    Desc Main
Document      Page 31 of 62

(g)  Fractional Cents.  Any other provision of the Plan notwithstanding, no Cash Distribution of fractional cents will be made.  Whenever any Cash Distribution of a fraction of a cent would otherwise be called for, the actual Cash Distribution shall reflect a rounding down of such fraction to the nearest whole cent.

(h)  Distributions on Non-Business Days.  Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

(i)  Partial Distributions on Disputed Claims.  No payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim.

(j)  Disputed Payments.  If any dispute arises as to the identity of the Holder of an Allowed Claim entitled to receive any Distribution under the Plan, the Reorganized Debtors may retain such Distribution until its disposition is determined by a Final Order or written agreement among the interested parties to such dispute.

(k)  Unclaimed Property.  Holders of Allowed Claims to Unclaimed Property shall cease to be entitled thereto, and such Unclaimed Property shall revert to the Reorganized Debtors, and to the extent such Unclaimed Property constitutes New Walter Energy Common Stock, such New Walter Energy Common Stock shall revert to Reorganized Walter and shall be deemed treasury shares thereof.

(l)  Voting of New Walter Energy Common Stock.  New Walter Energy Stock that is Unclaimed Property or reserved for Disputed Claims shall be voted by the Disbursing Agent at any meeting of the stockholders of Reorganized Walter Energy in an equal proportion to the votes of other stockholders.  For the avoidance of doubt, no Servicer shall be obligated to vote any New Walter Energy Stock that is Unclaimed Property or reserved for Disputed Claims.

(m)  Post-Consummation Effect of Evidence of Claims or Interests.  Notes, stock certificates and other evidence of Claims against or Interests in the Debtors shall, effective on the Effective Date, represent only the right to participate in the Distributions contemplated by the Plan and shall not be valid or effective for any other purpose.

(n)  Setoffs and Recoupment.  The Reorganized Debtors may, but shall not be required to, setoff or recoup against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Claim, any Claims that the Debtors or Reorganized Debtors may have against the Holder of such Allowed Claim; provided, however, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim against the Debtors or the Reorganized Debtors shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any setoff or recoupment claim that the Debtors or the Reorganized Debtors may possess against such Holder.

Case 15-02741-TOM7    Doc 566    Filed 08/26/15    Entered 08/26/15 16:50:48    Desc Main
Document    Page 32 of 62

(o)    Compliance with Tax Requirements.  In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all Distributions pursuant to the Plan that may be necessary or appropriate to comply with such withholding and reporting requirements.  Notwithstanding any other provision of the Plan, each Person that has received any Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution.  Any party issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, not to make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such withholding Tax obligations and, if any party issuing any instrument or making any Distribution under the Plan fails to withhold with respect to any such Holder's Distribution, and is later held liable for the amount of such withholding, the Holder shall reimburse such party promptly upon demand therefor.  The Disbursing Agent and any Servicer may require, as a condition to the receipt of a Distribution, that a Holder complete the appropriate Form W-8 or Form W-9, as applicable to each Holder.  If a Holder fails to comply with such a request within six (6) months, such Distribution shall be deemed an unclaimed Distribution.

(p)    Expungement or Adjustment to Claims.  Any Claim that has been paid, satisfied or superseded may be expunged on the claims register by the Claims and Noticing Agent, the Debtors or the Reorganized Debtors, as applicable, and any Claim that has been amended may be adjusted thereon by the Claims and Noticing Agent, the Debtors or the Reorganized Debtors, as applicable, without a Claim objection.

(q)    Insured Claims.  Notwithstanding anything to the contrary herein, any Allowed Insured Claim shall first be paid from proceeds of the applicable Debtors' insurance policy, with the balance, if any, of such Claim being treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

(r)    Allocation of Plan Distribution Between Principal and Interest. Except as otherwise required by law (as reasonably determined by the Debtors), Distributions with respect to a Claim shall be allocated first to the principal portion of such Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Claim, if any.

## ARTICLE IV
## PROCEDURES FOR DETERMINATION OF CLAIMS AND INTERESTS

4.1.    Objections to Claims.  Objections to any Claim filed by any party other than the Debtors (other than Administrative Claims governed by Section 2.4 of the Plan) must be filed no later than twenty (20) days before the Effective Date; provided, however, that the Reorganized Debtors and only the Reorganized Debtors may file objections to Claims subsequent to the Effective Date through and including the Claims Objection Deadline.  To the extent property is distributed to a Person on account of a Claim that is not an Allowed Claim, such property shall be held in trust for and shall promptly be returned to the Reorganized Debtors.  On and after the Effective Date, the Reorganized Debtors shall have authority to

30

continue to prosecute, settle or withdraw objections to Claims and shall be entitled to compromise or settle any Disputed Claim.

4.2. <u>Estimation of Disputed Claims</u>. The aggregate Face Amount of (a) Disputed Claims and (b) Allowed Claims in any Class shall set the maximum allowable aggregate amount of Claims in such Class. The existence of a Disputed Claim in any Class shall not impair or impede the making of a Distribution to Allowed Claims in such Class or any other Class. If the Allowed amount of any particular Disputed Claim is reconsidered under Section 502(j) of the Bankruptcy Code and Bankruptcy Rule 3008 and/or is Allowed in an amount that is greater than the estimated amount of such Claim, or the ultimately Allowed amount of all Disputed Claims in any given Claim is greater than the estimated aggregate amount of such Claims, no Holder of Claims shall have recourse against the Reorganized Debtors (or any property thereof), any Distributions made to a creditor in any other Class herein, or any Distribution previously made on account of any Allowed Claim (however, nothing herein shall modify any right of a Holder of a reconsidered Claim under the penultimate sentence of Section 502(j) of the Bankruptcy Code).

4.3. <u>Payments and Distributions on Disputed Claims</u>.

(a) <u>Disputed Claims Reserve</u>. From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by Final Order, the Disbursing Agent shall reserve and hold in escrow (the "<u>Disputed Claims Reserve</u>") for the benefit of each Holder of a Disputed Claim, New Walter Energy Common Stock in an amount equal to the Pro Rata Share of Distributions which would have been made to the Holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the Disputed Claim amount, (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to Section 502 of the Bankruptcy Code for purposes of allowance, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim may ultimately become an Allowed Claim, or (iii) such other amount as may be agreed upon by the Holder of such Disputed Claim and the Debtors or the Reorganized Debtors. The Disputed Claims Reserve is intended to be treated for U.S. income tax purposes as a grantor trust of the Debtors.

(b) <u>Distributions on Disputed Claims Upon Allowance</u>. The Disbursing Agent shall distribute to the Holder of a Disputed Claim that becomes an Allowed Claim, in whole or in part, the Distribution to which such Holder is then entitled under the Plan for such Allowed Claim, in the Disbursing Agent's sole discretion, (i) as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order, (ii) at the next applicable Interim Distribution Date, or (iii) at such other time the Disbursing Agent reasonably determines is appropriate under the circumstances, but in any event, no later than the Final Distribution Date.

Case 15-02741-TOM7    Doc 566    Filed 08/26/15    Entered 08/26/15 16:50:48    Desc Main
Document      Page 34 of 62

# ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES, EMPLOYEE BENEFITS AND INSURANCE POLICIES

5.1.    Rejection of Executory Contracts and Unexpired Leases.

(a)    Automatic Rejection.  Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, including all Executory Contracts or Unexpired Leases set forth on the schedule of "Rejected Executory Contracts and Unexpired Leases" in Plan Supplement 9A, unless any such Executory Contract or Unexpired Lease:  (a) is listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" contained in Plan Supplement 9B; (b) has been previously assumed by the Debtor by Final Order of the Bankruptcy Court or has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (c) is the subject of a motion to assume or reject pending as of the Effective Date; (d) is an Executory Contract related to any Intercompany Claim or Intercompany Interest; (e) is an Executory Contract with a Governmental Unit related to any of the Debtor's business licenses, permits or similar agreement; (f) is an Executory Contract related to any of the Debtor's mineral oil, gas or other hydrocarbon leaseholds (including all ancillary agreements related thereto, such as pooling agreements, unitization agreements, easements and surface leases), or other real property interests unless such Executory Contract is set forth on Plan Supplement 9A; or (g) is otherwise assumed pursuant to the terms of the Plan.

The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases, including under Section 502(g) of the Bankruptcy Code, subject to compliance with the requirements herein.

(b)    Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases.  Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such Executory Contract or Unexpired Lease.  In particular, notwithstanding any applicable non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtor or the Reorganized Debtor, as applicable, from counterparties to rejected or repudiated Executory Contracts.

(c)    Claims Procedures Related to Rejection of Executory Contracts or Unexpired Leases.  Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Claims and Noticing Agent no later than thirty (30) days after the later of the Effective Date or the effective date of rejection. Any Proofs of Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not

32

timely filed shall be disallowed automatically and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of an Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be classified as Unsecured Claims unless such Claim is subject to subordination.

(d)    Reservation of Rights.  Notwithstanding anything to the contrary in the Plan, prior to the Effective Date, the Debtors may amend any decision with respect to the rejection of any Executory Contract or Unexpired Lease.  Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on Plan Supplement 9A, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.

5.2.    Assumption of Executory Contracts and Unexpired Leases.  Upon the occurrence of the Effective Date, each Executory Contract or Unexpired Lease listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in Plan Supplement 9B shall be assumed, or assumed and assigned, as applicable, and shall vest in and be fully enforceable by the Reorganized Debtors or their assignees in accordance with its terms, except as modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law. With respect to each such Executory Contract and Unexpired Lease listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in Plan Supplement 9B, the Debtors shall have designated a proposed Cure, and the assumption of such Executory Contracts and Unexpired Leases may be conditioned upon the disposition of all issues with respect to such Cure.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving any such assumptions pursuant to Sections 365(a) and 1123 of the Bankruptcy Code.

5.3.    Modifications, Amendments, Supplements, Restatements, or Other Agreements.  Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant to the Plan. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

5.4.    Proofs of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed.  Any and all Proofs of Claims based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including hereunder, except

33

Proofs of Claims asserting Cure amounts, pursuant to the order approving such assumption, including the Confirmation Order, shall be deemed disallowed and expunged from the claims register as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court.

5.5. <u>Limited Extension of Time to Assume or Reject.</u> In the event of a dispute as to whether a contract is executory or a lease is unexpired, the right of the Debtors or the Reorganized Debtors, as applicable, to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired. The deemed assumptions and rejections provided for in this Article V of the Plan shall not apply to such contract or lease.

In the event the Reorganized Debtors become aware after the Effective Date of the existence of an Executory Contract or Unexpired Lease, the right of the Reorganized Debtors to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the date on which the Reorganized Debtors become aware of the existence of such contract or lease. The deemed rejection provided for in this Article V of the Plan shall not apply to any such Executory Contract or Unexpired Lease.

The Debtors reserve the right, with the consent of the Required Consenting First Lien Creditors, to amend the Plan Supplements 9A and 9B to add or remove any Executory Contract or Unexpired Lease from such Plan Supplements at any time prior to the Confirmation Hearing.

5.6. <u>Cure.</u> The applicable Debtor or the Reorganized Debtor, as the case may be, except as otherwise agreed by the parties, will cure any and all undisputed defaults under any Executory Contract or Unexpired Lease that is assumed or assigned by such Debtor in accordance with, and to the extent required by, Section 365 of the Bankruptcy Code.

On or about twenty 20 days prior to the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices with respect to any proposed assumption or assignment of any Executory Contracts or Unexpired Leases, including any proposed amounts of Cure Claims to the applicable third parties, including all Executory Contract and Unexpired Lease counterparties. The Cure Notices shall include (a) procedures for objecting to proposed assumptions or assignments of Executory Contracts and Unexpired Leases, (b) Cure amount to be paid in connection therewith and (c) procedures for resolution by the Bankruptcy Court of any related disputes. Any objection by an Executory Contract or Unexpired Lease counterparty to a proposed assumption or assignment or related Cure amount must be filed, served and actually received by the Debtors and the counsel to the Consenting First Lien Creditors at least ten (10) days before the date of the first scheduled Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or assignment or Cure amount will be deemed to have assented to such assumption, assignment, or Cure amount.

In the event there is a dispute as of the Effective Date regarding the amount required to cure defaults under any Executory Contract or Unexpired Lease that the Debtors

propose to assume or assign, the Debtors or Reorganized Debtors, as applicable, shall have until thirty (30) days after entry of a Final Order determining the amount, if any, of the applicable Debtor's or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed by the parties, to determine whether to assume, assign or reject the related Executory Contract or Unexpired Lease. In the event the applicable Debtor or the Reorganized Debtor determines to assume or assign the applicable Executory Contract or Unexpired Lease related to the disputed Cure, such disputed Cure amount shall be paid either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the applicable Debtor's or the Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

5.7.    <u>Postpetition Contracts and Leases</u>.  The Debtors shall not be required to assume or reject any contract or lease entered into by the Debtors after the Petition Date.  Any such contract or lease shall continue in effect in accordance with its terms after the Effective Date, unless the Debtors or the Reorganized Debtors have obtained a Final Order of the Bankruptcy Court approving termination of such contract or lease.

5.8.    <u>Benefit Plans</u>.  As of and subject to the Effective Date, all benefit plans providing retiree benefits (as defined in the Section 1114 of the Bankruptcy Code) listed on the schedule of Assumed Executory Contracts and Unexpired Leases filed as part of the Plan Supplement shall be deemed to be, and shall be treated as though they are, Executory Contracts that are assumed under the Plan, and the Debtors' obligations under such agreements and programs shall survive the Effective Date, without prejudice to the Reorganized Debtors' rights under applicable non-bankruptcy law to modify, amend, or terminate the foregoing arrangements. All (i) employment and severance agreements, plans or policies, (ii) any other benefits plans providing retiree benefits (including those previously rejected, modified or terminated by order of the Bankruptcy Court), and (iii) all other employee compensation and benefit plans, policies, programs, arrangements, and agreements of the Debtors applicable generally to their employees in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, incentive plans, and life, accidental death, and dismemberment insurance plans, shall be deemed to be, and shall be treated as though they are, Executory Contracts rejected as of the Effective Date unless they are listed on the schedule of Assumed Executory Contracts and Unexpired Leases filed as part of the Plan Supplement, in which case they will be deemed to be assumed as of the Effective Date and the Debtors' obligations under such assumed plans, policies, programs, arrangements, and agreements shall survive the Effective Date, without prejudice to the Reorganized Debtors' rights under applicable non-bankruptcy law to modify, amend, or terminate such agreements, plans policies and programs.

5.9.    <u>Collective Bargaining Agreements</u>.  Unless otherwise specified in the Plan, and unless previously assumed, rejected or modified by the Debtors in accordance with Sections 1113 and 1114 of the Bankruptcy Code, as applicable, on the Effective Date, the Debtors, pursuant to Section 365 of the Bankruptcy Code, shall assume and continue to perform all obligations required under its Collective Bargaining Agreements listed on the schedule of Collective Bargaining Agreements to be filed as part of the Plan Supplement (subject to the terms and conditions of any such Collective Bargaining Agreement including as modified pursuant to Sections 1113 and 1114 as the case may be, and, in the event that a Collective Bargaining Agreement expires pursuant to its terms and subject to applicable law, the agreement

35

of the Debtor(s) and the applicable union on new terms). All Proofs of Claim filed by any union or any other Persons for amounts due under any Collective Bargaining Agreement shall be considered satisfied by the agreement and obligation to assume and cure in the ordinary course as provided herein.

5.10. <u>Workers Compensation Claims and Other Insured Claims.</u> As of the Effective Date, except as otherwise set forth herein or in the Plan Supplement, the Reorganized Debtors shall continue to honor their obligations under: (a) all applicable federal and state workers' compensation laws; and (b) the Reorganized Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds, policies, programs and plans for workers' compensation and workers' compensation insurance. Any Workers Compensation Claims and, subject Section 3.4(q) of the Plan, any Insured Claims (including, but not limited to, employer liability Claims and tort Claims) shall be paid in the ordinary course of business. Any dispute regarding a Workers Compensation Claim or Insured Claim shall be resolved in the ordinary course without the need for court approval.

5.11. <u>Utility Agreements.</u> To the extent that (a) the Debtors are party to any utility service contract or similar agreement with a utility, (b) such agreement constitutes an Executory Contract, and (c) such agreement (i) has not been previously rejected or assumed by order of the Bankruptcy Court, (ii) is not subject to a motion to reject such Executory Contract filed on or prior to the Effective Date, (iii) is not listed on Plan Supplement 9A or Plan Supplement 9B, and (iv) has not been designated for rejection in accordance with Section 5.1, such utility service contract or similar agreement with a utility (including any modifications, amendments, supplements, restatements or other related agreements) will be deemed assumed by the applicable Debtor(s) in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. The Cure amount to be paid in connection with the assumption of a utility service contract or similar agreement with a utility that is not specifically identified in Plan Supplement 9B shall be [$0.00].

5.12. <u>Preservation of Insurance.</u> Any and all directors and officers liability and fiduciary insurance or tail policies, and any other insurance policies of the Debtors in existence as of the Effective Date, shall be reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assume or assumed and assigned by the applicable Debtor or Reorganized Debtor pursuant to Section 365 of the Bankruptcy Code and this Article V of the Plan. Nothing in the Plan shall affect, impair or prejudice the rights of the insurance carriers or the Reorganized Debtors under the insurance policies in any manner, and such insurance carriers and Reorganized Debtors shall retain all rights and defenses under such insurance policies, and such insurance policies shall apply to, and be enforceable by and against, the Reorganized Debtors in the same manner and according to the same terms and practices applicable to the Debtors, as existed prior to the Effective Date. The Debtors' discharge and release from all Claims as provided in the Plan, except as necessary to be consistent with the Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, the Reorganized Debtors or any other Person or entity. The Debtors' tail coverage under their existing directors' and officers' liability insurance policies covering their current and former senior executive officers and current and former directors for Claims arising prior to the Effective Date brought against them shall be maintained after the Effective Date for the duration and according to the terms set forth therein.

5.13.    Indemnification    Obligations    Owed    by    the    Debtors.    The Reorganized Debtors shall only indemnify any Person for an Indemnification Obligation who served or was employed by the Debtors as one of the Debtors' directors, officers, employees or agents if such Person served or was employed in such capacity as of the Petition Date and as of the Effective Date for any Claims arising from and after the Petition Date to the Effective Date; provided, however, that in no event shall any of the Reorganized Debtors be obligated for any such Indemnity Obligation that has been determined by Final Order to have resulted from gross negligence, willful misconduct, fraud, intentional tort or criminal conduct.  For the avoidance of doubt, all other Indemnification Obligations, to the extent Allowed as Claims, shall constitute Unsecured Claims, unless an Indemnification Obligation arises under an agreement entered into post-petition or pursuant to an Executory Contract that the Debtors assume under Section 365 of the Bankruptcy Code.

## ARTICLE VI
## IMPLEMENTATION OF THE PLAN

6.1.    Nonconsensual Confirmation.    If all applicable requirements for confirmation of the Plan are met as set forth in Section 1129(a)(1) through (16) of the Bankruptcy Code, except subsection (8) thereof, then the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of Section 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is Impaired under, and has not accepted, the Plan.

6.2.    Distributions in Satisfaction.  Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Interests, whether known or unknown, that arose or existed prior to the Effective Date.

6.3.    Cancellation of Securities and Agreements.  On the Effective Date, except as otherwise specifically provided for in the Plan, (a) the obligations of the Debtors under the First Lien Credit Agreement, 9.500% Notes Indenture, 11.0%/12.0% Notes Indenture, 9.875% Notes Indenture and the 8.500% Notes Indenture and all the guarantee agreements related thereto, and any other certificate, share, note, purchase right, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, membership interest, equity, or profits interest in Walter Energy or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors and ownership interests that are specifically reinstated pursuant to the Plan including the Intercompany Claims and Intercompany Interests), shall be canceled as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, guarantees, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the

37

Debtors shall be fully released, settled, and compromised except as expressly provided herein; provided, however, that notwithstanding the occurrence of the Effective Date, any such agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing such Holders to receive Distributions under the Plan as provided herein (and all distribution provisions in any such agreement shall terminate completely upon completion of all such Distributions), to allow Holders of Claims to retain their respective rights and obligations vis-à-vis other Holders of Claims pursuant to applicable governing documents, and to preserve any charging Liens of any Servicer; provided, further, that the Intercreditor Agreement and the rights of the Bank Agent and the parties thereto other than the Debtors to enforce the provisions of the Intercreditor Agreement as against and amongst themselves shall not be affected by and shall survive the Plan, entry of the Confirmation Order and the occurrence of the Effective Date. For the avoidance of doubt, the Intercreditor Agreement shall not be enforceable against the Debtors after the Effective Date. As a condition precedent to receiving any Distribution on account of its First Lien Other Debt Claim, each Record Holder of a First Lien Other Debt Claim shall be deemed to have surrendered its First Lien Other Debt Claim or other documentation (including any notes) underlying such First Lien Other Debt Claim and all such surrendered First Lien Other Debt Claims and other documentation (including any notes) shall be deemed to be cancelled pursuant to this Section 6.3, except to the extent otherwise provided herein. Subsequent to the performance by the First Lien Notes Indenture Trustee and the Bank Agent, as applicable, or their respective agents of any duties that are expressly required under the Plan and the Confirmation Order, the First Lien Notes Indenture Trustee and the Bank Agent, and their respective agents shall be (i) fully relieved of, and released from, all obligations arising under the First Lien Notes Indenture and the First Lien Credit Agreement, as applicable, or under any other applicable agreements or law and (ii) deemed to be fully discharged.

6.4.     Enforcement of Subordination. The classification and manner of satisfying all Claims and Interests and the respective Distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether under general principles of equitable subordination, Section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Plan and Confirmation Order shall enjoin, effective as of the Effective Date, all Persons and entities from enforcing or attempting to enforce any such contractual, legal and/or equitable rights so satisfied, compromised and settled. Pursuant to Section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

6.5.     Surety Bonds and Letters of Credit. On the Effective Date, all of the Debtors' existing surety and reclamation bonds shall continue in place, on commercially reasonable terms and as may be agreed to by the Required Consenting First Lien Creditors. Except as otherwise provided in the Plan, on the Effective Date, subject to Section 2.6, all outstanding Letters of Credit that currently backstop the Debtors' existing surety and reclamation bonds shall be reinstated or replaced in their face amount under the Exit Financing.

6.6.     Reinstatement and Continuation of Insurance Policies. From and after the Effective Date, each of the Debtors' insurance policies in existence as of the Effective Date shall be reinstated and continued in accordance with its terms and, to the extent applicable, shall be

Case 15-02741-TOM7     Doc 566     Filed 08/26/15     Entered 08/26/15 16:50:48     Desc Main
Document     Page 41 of 62

deemed assumed by the applicable Reorganized Debtor pursuant to Section 365 of the Bankruptcy Code and Section 5.12 of this Plan.

6.7. <u>Release of Liens</u>. Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and consistent with the treatment provided for Claims and Interests in Article II of the Plan, all Liens, mortgages, deeds of trust or other security interests, including any Liens granted as adequate protection against the property of any Estate, shall be fully released and discharged, and all of the right, title and interest of any Holder of such Liens, mortgages, deeds of trust or other security interests, including any rights to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns. For the avoidance of doubt, the charging Liens of the First Lien Notes Indenture Trustee under the First Lien Notes Indenture may be asserted on the Distributions to Holders of Allowed Claims in Class 2 and, to the extent asserted, shall remain in place until the reasonable and documented fees and expenses of the First Lien Notes Indenture Trustee are satisfied as provided herein. As of the Effective Date, the Reorganized Debtors as well as the Bank Agent, the First Lien Notes Indenture Trustee and their respective counsel (each at the Reorganized Debtors' sole expense) shall be authorized to execute and file on behalf of creditors Form UCC-3 termination statements, mortgage releases or such other forms as may be necessary or appropriate to implement the provisions of this Section 6.7.

6.8. <u>Special Provision Governing Unimpaired Claims</u>. Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim.

6.9. <u>Implementation of the Reorganization</u>. The Debtors shall consummate their reorganization through the following additional steps:

(a) <u>Exit Financing</u>. On the Effective Date, the Reorganized Debtors shall be authorized to consummate the Exit Financing (if obtained) and to execute, deliver and enter into the Exit Financing Documents, and any related agreements or filings, without the need for any further corporate or other organizational action and without further action by the Holders of Claims or Interests, and the Exit Financing Commitment Agreements and any related documents, agreements or filings shall be executed and delivered and the applicable Reorganized Debtors shall enter into the Exit Financing and be permitted to incur or issue the indebtedness available thereunder. The material terms of the Exit Financing (to the extent known) shall be included in the Plan Supplement.

(b) <u>Issuance of New Walter Energy Common Stock</u>. On the Effective Date, Reorganized Walter Energy shall authorize and issue [•] shares of New Walter Energy Common Stock. The New Walter Energy Common Stock shall be distributed in accordance with and pursuant to the Plan and shall be deemed issued on the Effective Date. Any shares not necessary to satisfy obligations under the Plan shall have the status of authorized but not issued shares of Reorganized Walter Energy. Each Distribution and issuance of the New Walter Energy Common Stock under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such Distribution or issuance and by the terms and conditions of the instruments

39

evidencing or relating to such Distribution or issuance, which terms and conditions shall bind each Person receiving such Distribution or issuance. The New Walter Energy Common Stock is authorized without the need for any further corporate action or without any further action by the Debtors or the Reorganized Debtors, as applicable.

6.10. <u>Exemptions from Securities Act Registration Requirements</u>. The offering, issuance, and distribution of any securities pursuant to the Plan, including the issuance and distributions of New Walter Energy Common Stock and any and all settlement agreements incorporated therein will be exempt from the registration requirements of Section 5 of the Securities Act pursuant to (x) Section 1145 of the Bankruptcy Code to the maximum extent permitted by law and applicable and (y) to the extent that the exemption specified in section 1145 is either not permitted or not applicable, Section 4(a)(2) of the Securities Act, or any other available exemption from registration under the Securities Act, as applicable. Section 4(a)(2) of the Securities Act exempts transactions not involving a public offering, and Section 506 of Regulation D of the Securities Act provides a safe harbor under section 4(a)(2) for transactions that meet certain requirements. In addition, under section 1145 of the Bankruptcy Code, if applicable, any securities issued pursuant to the Plan and any and all settlement agreements incorporated therein will be freely transferable under the Securities Act by the recipients thereof, subject to (a) the provisions of Section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(ll) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments, and (b) any other applicable regulatory approval. In reliance upon these exemptions, the offer, issuance, and distribution of securities under the Plan will not be registered under the Securities Act or any applicable state Blue Sky Laws, and may not be transferred, encumbered or otherwise disposed of in the absence of such registration or an exemption therefrom under the Securities Act or under such laws and regulations thereunder.

6.11. <u>Amendments to Charter Documents</u>.

(a) <u>Walter Energy</u>. On the Effective Date, or as soon thereafter as is practicable, the articles of incorporation and bylaws of Walter Energy shall be amended, among other modifications, to (i) authorize the issuance of the New Walter Energy Common Stock, (ii) provide for the cancellation of all outstanding Old Common Stock, and (iii) prohibit the issuance of nonvoting equity securities only so long as, and to the extent that, the issuance of nonvoting equity securities is prohibited by the Bankruptcy Code. Reorganized Walter Energy is authorized to issue or cause to be issued the New Walter Energy Common Stock for Distribution in accordance with the terms of the Plan and the amended certificate of incorporation without the need for any further corporate action. The New Organizational Documents shall be included in the Plan Supplement. On the Effective Date, at the option of the Required Consenting First Lien Creditors, Reorganized Walter Energy and all Holders of New Walter Energy Common Stock may enter into, or be deemed to enter into, one or more corporate governance, organizational or similar documents, including a shareholders agreement or similar document and/or a registration rights agreement, each of which shall be acceptable to the Required Consenting First Lien Creditors, and all Holders of New Walter Energy Common Stock will be bound thereby in all

Case 15-02741-TOM7    Doc 566    Filed 08/26/15    Entered 08/26/15 16:50:48    Desc Main
Document      Page 43 of 62

respects, whether or not they execute or agree to be bound by such documents. The material terms of any such documents will be set forth in the Plan Supplement Documents.

(b)     Subsidiaries.  On the Effective Date, the New Organizational Documents of each reorganized subsidiary of Walter Energy shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code, including to prohibit the issuance of nonvoting equity securities only so long as, and to the extent that, the issuance of nonvoting equity securities is prohibited by the Bankruptcy Code.

(c)     Directors and Officers of the Reorganized Debtors.  On the Effective Date, the terms of the current directors or managers of the Debtors, as the case may be, shall expire.  On the Effective Date, the officers of each of the Reorganized Debtors shall be appointed in accordance with the New Organizational Documents and other constituent documents of each Reorganized Debtor.  Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the initial officers of the Reorganized Debtors will be disclosed in the Plan Supplement, with such officers to be designated by the Required Consenting First Lien Creditors in accordance with applicable law.

The initial board of directors of Reorganized Walter Energy and any principal operating subsidiary of Reorganized Walter Energy that has a board of directors, board of managers, or similar governing body shall be identified in the Plan Supplement and the members shall be designated by the Required Consenting First Lien Creditors in accordance with applicable law.  Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the initial members of the boards of directors and similar governing bodies of Reorganized Walter Energy and any principal operating subsidiary of Reorganized Walter Energy will be disclosed in the Plan Supplement.  Any successors to the Reorganized Debtors' initial boards and other governing bodies will be appointed in compliance with the applicable Reorganized Debtor's New Organizational Documents, and each such director shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

(d)     Powers of Officers.  The senior executive officers of the Debtors or the Reorganized Debtors, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

(e)     Restructuring Transactions.  On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may simplify and rationalize their corporate structure by eliminating certain entities that are deemed no longer essential to the Reorganized Debtors and may take all actions that may be necessary or appropriate to effect such transactions, including any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including:  (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy applicable requirements of law and any other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms

41

consistent with the terms of the Plan and having other terms for which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; (iv) the execution and delivery of appropriate resolutions, agreements or other documents to create such new corporate entities as are necessary to change any Debtor's state of incorporation; and (v) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law (collectively, the "Restructuring Transactions").

(f)     Management of Reorganized Debtors.  The Reorganized Debtors' senior executive officers shall serve in accordance with any employment agreement with the Reorganized Debtors and applicable non-bankruptcy law.  The Debtors will disclose the material terms of any such employment agreements in the Plan Supplement.

(g)     Management Incentive Plan.  Following the Effective Date, Reorganized Walter Energy shall reserve an aggregate amount of up to ten percent (10%) of the New Walter Energy Common Stock (on an as-diluted basis) for distribution to certain of its employees pursuant to the Management Incentive Plan.  The terms of the Management Incentive Plan and any awards thereunder shall be determined by the board of directors of Reorganized Walter Energy.

(h)     Corporate Action.  Except as set forth herein, any action under the Plan to be taken by or required of the Debtors or the Reorganized Debtors, including, without limitation, the adoption or amendment of certificates of formation and other charter documents, the issuance of securities and instruments or the selection of senior executive officers or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable, or security or Interest Holders.

The Debtors (with the consent of the Required Consenting First Lien Creditors) or the Reorganized Debtors, as applicable, shall be authorized to execute, deliver, file, and record such documents (including the Plan Supplement Documents), contracts, instruments, releases and other agreements, and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further court, corporate, board, member or shareholder approval or action.  In addition, the selection of the Persons who will serve as the initial directors, senior executive officers and managers of the Reorganized Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors, board of managers, or members of the applicable Reorganized Debtor.

**ARTICLE VII**
**CONDITIONS PRECEDENT**

7.1.   Conditions Precedent to Confirmation.  The following are conditions precedent to Confirmation of the Plan that may be satisfied or waived in accordance with Section 7.3 of the Plan:

42

(a)     the Restructuring Support Agreement shall not have been terminated in accordance with its terms;

(b)     the Bankruptcy Court shall have entered the Disclosure Statement Order in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors;

(c)     the Plan and the Plan Supplement Documents, including any exhibits, schedules, amendments, modifications or supplements thereto shall have been filed in substantially final form and shall be in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors; provided, however, that the New Organizational Documents only need to be acceptable to the Required Consenting First Lien Creditors;

(d)     the Bankruptcy Court shall have entered an order or orders approving (i) a settlement with the authorized representative for the UMWA and the USW, in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors, with respect to the applicable Collective Bargaining Agreement, or (ii) a motion under Section 1113 of the Bankruptcy Code rejecting the Collective Bargaining Agreements with the UMWA and/or USW, as applicable, in each case in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors; and

(e)     the Bankruptcy Court shall have entered an order or orders with respect to each Retiree Group approving (i) a settlement with respect to each Retiree Group with the applicable authorized representative of the respective retirees or the Section 1114 Committee, in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors, or (ii) a motion under Section 1114 of the Bankruptcy Code authorizing termination of retiree benefits (as defined in Section 1114 of the Bankruptcy Code) being received by the UMWA retirees, USW retirees, and non-union retirees, as applicable, in each case in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors.

7.2.     Conditions Precedent to Effectiveness.     The following are conditions precedent to the Effective Date that may be satisfied or waived in accordance with Section 7.3 of the Plan:

(a)     the Restructuring Support Agreement shall have been assumed by the Debtors pursuant an order of the Bankruptcy Court, which order shall be in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors, and such Restructuring Support Agreement shall not have been terminated in accordance with its terms;

(b)     the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors, and the Confirmation Order shall be a Final Order;

(c)     negotiation, execution and delivery of definitive documentation with respect to the Plan and any Plan Supplement Document, each in form and substance acceptable to the Debtors and the Required Consenting First Lien Creditors, and otherwise consistent with the terms and conditions hereof or the Restructuring Support Agreement, as

43

applicable; provided, however, that the New Organizational Documents only need to be acceptable to the Required Consenting First Lien Creditors.

(d) all authorizations, consents, regulatory approvals, rulings or documents (if any) that are necessary for the Plan's effectiveness shall have been obtained;

(e) the New Organizational Documents for each of the Debtors shall have been amended as provided in Section 6.11 of the Plan;

(f) the New Walter Energy Common Stock shall have been issued and authorized and shall be consistent with the Plan;

(g) as of the Effective Date, the aggregate amount of all Allowed or projected non-ordinary course Administrative Claims and non-ordinary course Priority Claims (as specified in this Section 7.2(g)) shall not exceed $10.0 million, which projections the Debtors, in consultation with the Consenting First Lien Creditors' Advisors, shall reasonably formulate in advance of the Confirmation Hearing. For purposes of this Section 7.2(g), non-ordinary course Administrative Claims and non-ordinary course Priority Claims do not include any Fee Claims, claims arising under Sections 503(b)(9) or 507(b) of the Bankruptcy Code, post-petition operating expenses, severance obligations and payments, ordinary course Administrative Claims and Priority Tax Claims, Cures, reclamation and environmental obligations, Coal Act and Black Lung obligations, and employee and retiree benefit obligations accrued in the ordinary course of the Debtors' business prior to implementing the relief under Sections 1113 and 1114 of the Bankruptcy Code;

(h) on and simultaneously with the occurrence of the Effective Date, the Reorganized Debtors shall have closed on the Exit Financing, which Exit Financing shall be in form and substance acceptable to the Debtors and Required Consenting First Lien Creditors; and

(i) all of the documented fees, costs and expenses of (a) the Consenting First Lien Creditors' Advisors, the Consultants (as defined in the Restructuring Support Agreement), and documented out-of-pocket costs or expenses of the Consenting First Lien Creditors, each in accordance with section 4(b) of the Restructuring Support Agreement, and (b) the Bank Agent and the First Lien Notes Indenture Trustee and their respective counsel in accordance with the Cash Collateral Order, shall have been paid in full in Cash.

7.3. Waiver of Conditions. The conditions to Confirmation and effectiveness set forth in Sections 7.1 and 7.2 may be waived only by the consent of both the Debtors and the Required Consenting First Lien Creditors (and with respect to Section 7.2(i), the consent of the Bank Agent and the First Lien Notes Indenture Trustee), in each case, without notice, leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

7.4. Effect of Failure of Conditions. In the event that the Effective Date does not occur: (a) the Confirmation Order shall be vacated, (b) no Distributions under the Plan shall be made, (c) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation

44

Date had never occurred, and (d) the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors unless extended by Bankruptcy Court order.

7.5. <u>Substantial Consummation</u>. "<u>Substantial Consummation</u>" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

7.6. <u>Order Denying Confirmation</u>. If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Interests in the Debtors, (b) prejudice in any manner the rights of the Holder of any Claim against, or Interest in, the Debtors, (c) prejudice in any manner any right, remedy, claim or Cause of Action of the Debtors, or (d) be deemed an admission against interest by the Debtors.

## ARTICLE VIII
## EFFECT OF THE PLAN
## <u>ON ASSETS, CLAIMS AND INTERESTS</u>

8.1. <u>Revesting of Assets</u>. On the Effective Date, all property of the Debtors' Estates, to the fullest extent provided by Section 541 of the Bankruptcy Code, and any and all other rights and assets of the Debtors of every kind and nature, shall automatically vest or revest in the Reorganized Debtors free and clear of all Liens, Claims and Interests, other than those Liens, Claims and Interests retained (including the Intercompany Claims and Intercompany Interests) or created pursuant to the Plan.

8.2. **<u>Discharge of Claims and Termination of Interests</u>**.

(a) **The Reorganized Debtors shall receive the benefit of any and all discharges under the Plan. On and after the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order or for some other specified reason, the Reorganized Debtors may operate the Debtors' business and may use, acquire or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.**

(b) **As discussed in detail in the Disclosure Statement and otherwise provided herein, pursuant to Section 1123 of the Bankruptcy Code, and in consideration for the classification, Distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies related to the contractual, legal and equitable rights that a Holder of a Claim or Interest may have in respect of such Claim or Interest. All Distributions made to Holders of Allowed Claims or Interests in any Class are intended to, and shall be, final.**

45

(c)     The rights afforded herein and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims, Interests and Causes of Action of any nature whatsoever, including any interest accrued thereon from and after the Petition Date and any Claims that are or may be subject to Section 1141(d)(6) of the Bankruptcy Code, against the Debtors, or any of their respective assets or properties, arising prior to the Effective Date.  Except as otherwise expressly specified in the Plan, the Confirmation Order shall act as of the Effective Date as a discharge of all debts of, Claims or Interests against or in, and Liens on the Debtors, their respective assets and properties, arising at any time before the Effective Date, regardless of whether a Proof of Claim with respect thereto was filed, whether the Claim or Interest is Allowed, or whether the Holder thereof votes to accept the Plan or is entitled to receive a Distribution hereunder.  Except as otherwise expressly specified in the Plan, after the Effective Date, any Holder of such discharged Claim or Interest shall be precluded from asserting against the Debtors, the Reorganized Debtors, or any of their respective assets or properties, any other or further Claim or Interest based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date, including any Claims that may be subject to Section 1141(d)(6) of the Bankruptcy Code.

3.3.     **Injunctions.**

(a)     **Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or released pursuant to the Plan or an Interest or other right of an equity security Holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or terminated Interests or rights: (i) commencing or continuing in any manner any action or other proceeding against the Debtors or the Reorganized Debtors or their respective property; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors or the Reorganized Debtors or their respective property; (iii) creating, perfecting or enforcing any Lien or encumbrance against the Debtors or the Reorganized Debtors or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or the Reorganized Debtors or their respective property; (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan; and (vi) taking any actions to interfere with the consummation or implementation of the Plan.**

(b)     **In exchange for the Distributions pursuant to the Plan, each Holder of an Allowed Claim receiving any Distribution pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section 8.3.**

8.4.     **Releases by the Debtors and Reorganized Debtors.  On the Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their Estates, shall be deemed to release unconditionally (a) all of their Representatives and (b) the Released Parties from any and all Claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or**

46

unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon actions taken solely in their capacities described above for any omission, transaction, agreement or event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors or their business and affairs, the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any other contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any obligations arising under the Plan or the obligations assumed hereunder; <u>provided</u>, <u>however,</u> that the foregoing provisions of this Section 8.4 shall not affect (i) the liability of any Person nor shall any such Person be released from any act or omission that constitutes gross negligence, willful misconduct, fraud or criminal acts as determined by a Final Order, (ii) any rights to enforce the Plan or the other contracts, instruments, releases, agreements or documents to be, or that were previously, entered into in connection with the Plan, (iii) except as otherwise expressly set forth in the Plan, any objections by the Debtors or the Reorganized Debtors to Claims or Interests filed by any Person against any Debtor and/or the Estates, including rights of setoff, refund, recoupment or other adjustments, (iv) the rights of the Debtors or the Reorganized Debtors to assert any applicable defenses in litigation or other proceedings, including with their employees, or any claim of the Debtors or the Reorganized Debtors, including (but not limited to) cross-claims or counterclaims or other Causes of Action against employees or other parties, arising out of or relating to actions for personal injury, wrongful death, property damage, products liability or similar legal theories of recovery to which the Debtors or Reorganized Debtors are a party, and (v) obligations arising under the Exit Financing Agreements. The releases in this Section 8.4 apply only to the Released Parties solely in their respective capacities as such.

8.5. <u>Releases by Holders of Claims</u>. On the Effective Date, the Released Parties and all Persons and their Representatives who directly or indirectly have held, hold, or may hold Claims against the Debtors, whether known or unknown, shall be deemed by virtue of their receipt of Distributions or the other treatment contemplated under the Plan, to have forever waived and released all such right or Claims, whether based upon tort or contract or otherwise, that they heretofore, now or hereafter possess or may possess against the Debtor Released Parties or the Released Parties and shall be deemed to have covenanted with the Debtors and the Released Parties to release and not to (a) sue or otherwise seek recovery from any of the Debtor Released Parties or any of the Released Parties on account of any Claim, Cause of Action, obligation, suit, judgment, damages, right and liability whatsoever, in any way related to the Debtors or their business and affairs, the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any other contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any obligations arising under the Plan or the obligations assumed hereunder, including but not limited to any Claim based upon tort, breach of contract, violations of federal or state securities laws or otherwise, based in whole or in part upon any act, occurrence, or failure to act from the beginning of time through the Effective Date or (b) assert against any of the Debtor Released Parties or any

47

Released Party any Claim, obligation, suit, judgment, damages, right, cause of action or liability that any Holder of a Claim or Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Transactions or any other transactions proposed in connection with the Chapter 11 Cases or any other contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any obligations arising under the Plan or the obligations assumed hereunder, **provided**, **however**, (i) none of the Debtor Released Parties or the Released Parties shall be released from any Claim primarily based on any act or omission that constitutes gross negligence, willful misconduct, fraud or criminal acts as determined by a Final Order, (ii) the foregoing release shall not apply to obligations arising under the Plan, (iii) the foregoing release shall not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan, (iv) the foregoing release does not apply to obligations arising under the Exit Financing Agreements, and (v) the foregoing release shall not apply to any indemnification or other surviving obligation or assumed Executory Contract or Unexpired Lease as expressly set forth in the Plan.

       8.6.    <u>Exculpation and Injunction in Respect of Released Parties</u>. **As of the Effective Date, the Debtor Released Parties and the Released Parties shall have no liability whatsoever to any Holder or purported Holder of a Claim or an Interest for any act or omission occurring during or in connection with the Chapter 11 Cases through the Effective Date in connection with, or arising out of, the Plan, the Disclosure Statement, entry into and negotiation of the Restructuring Support Agreement, the negotiation of the Plan and the Disclosure Statement, the negotiation of the Plan Supplement Documents, the pursuit of approval of the Disclosure Statement or the solicitation of votes for confirmation of the Plan, the Chapter 11 Cases, the consummation of the Plan, the Disclosure Statement or in furtherance thereof except for any act or omission that constitutes gross negligence, willful misconduct, fraud or a criminal act as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rule protecting such Debtor Released Parties and Released Parties from liability.**

       8.7.    <u>Preservation and Retention of Causes of Action</u>.  Except as expressly provided otherwise in the Plan, the Reorganized Debtors shall retain any and all Causes of Action, including all the Causes of Action identified on Plan Supplement 8, now owned or hereafter acquired by the Debtors (the "<u>Retained Causes of Action</u>").  Except as expressly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such Retained Causes of Action.  Nothing contained in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Claim, Retained Cause of Action, right of setoff, or other legal or equitable defense, including, but not limited to rights of recoupment, that the Debtors had immediately prior to the Petition Date that is not specifically waived or relinquished by the Plan. The Reorganized Debtors shall have, retain, reserve, assert and be entitled to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any and all such (a) Claims,

48

(b) Retained Causes of Action, including all potential Avoidance Actions, (c) rights of setoff and recoupment, and (d) any other legal or equitable defenses, including, but not limited to rights of recoupment, that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any Claims that are not specifically waived or relinquished by the Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. Except as expressly provided in the Plan or the Confirmation Order, the Reorganized Debtors may settle any Retained Causes of Action after the Effective Date without further notice or order from the Bankruptcy Court.

8.8. <u>Votes Solicited in Good Faith</u>. The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtors (and each of their respective affiliates, agents, directors, officers, members, employees, advisors, and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the securities offered and sold under the Plan and therefore have not been, and on account of such offer and issuance will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer or issuance of the securities offered and distributed under the Plan.

8.9. <u>Claims Incurred After the Effective Date</u>. Claims incurred by the Reorganized Debtors after the Effective Date, including, without limitation, Fee Claims incurred after such date, may be paid by the Reorganized Debtors, as the case may be, in the ordinary course of business and without application for or Bankruptcy Court approval, subject to any agreements with any such Claim Holders.

8.10. <u>Term of Bankruptcy Injunction or Stays</u>. All injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

8.11. <u>Dissolution of Official Committees</u>. Except to the extent provided herein, upon the Effective Date, the current and former members of the Creditors' Committee, the Section 1114 Committee and any other creditor, equity or other committee appointed in the Chapter 11 Cases pursuant to Sections 1102 or 1114 of the Bankruptcy Code, and their respective officers, employees, counsel, advisors and agents, shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases and such committees shall be dissolved; <u>provided</u>, <u>however</u>, that following the Effective Date, the Creditors Committee shall continue in existence and have standing and a right to be heard solely for the limited purposes of applications for compensation by Professionals and requests for allowance of Administrative Claims for substantial contribution pursuant to Section 503(b)(3)(D) of the Bankruptcy Code. Following the completion of the Creditors Committee's remaining duties set forth above, the Creditors Committee shall be dissolved, and the retention or employment of the Creditors Committee's respective attorneys, accountants and other agents shall terminate without the need for any further action by the Reorganized Debtors or approval by the Bankruptcy Court.

49

# ARTICLE IX
## MISCELLANEOUS PROVISIONS

9.1.     Retention of Jurisdiction.  Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising from or relating to the Chapter 11 Cases to the fullest extent of applicable law, including, without limitation:

(a)     to determine the validity under any applicable law, allowability, classification, dischargeability under Section 1141(d)(6) of the Bankruptcy Code, and priority of Claims and Interests upon objection, or to estimate, pursuant to Section 502(c) of the Bankruptcy Code, the amount of any Claim that is or is anticipated to be contingent or unliquidated as of the Effective Date;

(b)     to construe and to take any action authorized by the Bankruptcy Code and requested by the Reorganized Debtors or any other party in interest to enforce the Plan and the documents and agreements filed in connection with the Plan, issue such orders as may be necessary for the implementation, execution and consummation of the Plan, including, without limiting the generality of the foregoing, orders to expedite regulatory decisions for the implementation of the Plan and to ensure conformity with the terms and conditions of the Plan, such documents and agreements and other orders of the Bankruptcy Court, notwithstanding any otherwise applicable non-bankruptcy law;

(c)     to determine any and all applications for allowance of compensation and expense reimbursement of Professionals retained by the Debtors, the Reorganized Debtors, the Creditors' Committee or any official committee of retirees, and for members of the Creditors' Committee and of any official committee of retirees, for periods on or before the Effective Date, and to determine any other request for payment of administrative expenses;

(d)     to determine all matters that may be pending before the Bankruptcy Court on or before the Effective Date;

(e)     to resolve any dispute regarding the implementation or interpretation of the Plan, or any related agreement or document that arises at any time before the Chapter 11 Cases are closed, including the determination, to the extent a dispute arises, of the entities entitled to a Distribution within any particular Class of Claims and of the scope and nature of the Reorganized Debtors' obligations to cure defaults under assumed contracts, leases, franchises and permits;

(f)     to determine any and all matters relating to the rejection, assumption or assignment of Executory Contracts or Unexpired Leases entered into prior to the Petition Date, the nature and amount of any Cure required for the assumption of any Executory Contract or Unexpired Lease, and the allowance of any Claim resulting therefrom, including the amount, validity and treatment under any applicable law of any Claim for damages arising from or related to the rejection of any such contract;

(g)     to determine all applications, adversary proceedings, contested matters and other litigated matters that were brought or that could have been brought in the Bankruptcy Court on or before the Effective Date;

(h)     to determine matters concerning local, state and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code, and to determine any tax Claims that may arise against the Debtors or the Reorganized Debtors as a result of the transactions contemplated by the Plan; and

(i)     to modify the Plan pursuant to Section 1127 of the Bankruptcy Code or to remedy any apparent nonmaterial defect or omission in the Plan, or to reconcile any nonmaterial inconsistency in the Plan so as to carry out its intent and purposes.

From the Confirmation Date through the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date.

9.2.    <u>Terms Binding</u>.  Upon the entry of the Confirmation Order, all provisions of the Plan, including all agreements, instruments and other documents filed in connection with the Plan and executed by the Debtors or the Reorganized Debtors in connection with the Plan, shall be binding upon the Debtors, the Reorganized Debtors, all Claim and Interest Holders and all other Persons that are affected in any manner by the Plan.  All agreements, instruments and other documents filed in connection with the Plan shall have full force and effect, and shall bind all parties thereto as of the entry of the Confirmation Order, whether or not such exhibits actually shall be executed by parties other than the Debtors or the Reorganized Debtors, or shall be issued, delivered or recorded on the Effective Date or thereafter.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.3.    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules), (a) the laws of the State of New York (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified and (b) the laws of the state of formation of the Debtors shall govern corporate matters with respect to the Debtors, in each case without giving effect to the principles of conflicts of law thereof.

9.4.    <u>Severability</u>.  If the Bankruptcy Court determines at or before the Confirmation Hearing that any term or provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court may alter or interpret that term so it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted.  In the event that the Bankruptcy Court cannot interpret such provision in a manner acceptable to the Debtors and Required Consenting First Lien Creditors, then such provision (subject to Section 1127 of the Bankruptcy Code) shall be severable from the Plan and shall be null and void.  Notwithstanding any such holding, alteration, or interpretation, the remaining terms and conditions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated.  The

51

Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section 9.4, is valid and enforceable under its terms, is integral to the Plan and may not be deleted or modified without the Debtors' and the Required Consenting First Lien Creditors' consent, and is nonseverable and mutually dependent upon all other Plan terms and provisions.

9.5.    Inconsistencies.  Except as otherwise provided in the Plan, in the event of any inconsistency between the Plan, on the one hand, and the Disclosure Statement, the Restructuring Support Agreement, or any Ballot, on the other, the Plan shall control.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.  Unless otherwise specifically provided in the Confirmation Order, agreements entered into on or after the Effective Date, including the Exit Financing, shall be governed by their own terms.

9.6.    Incorporation by Reference.  Each exhibit, schedule or supplement to the Plan (including the Plan Support Documents) is incorporated herein by reference.

9.7.    Modifications to the Plan.  The Debtors, with the consent of the Required Consenting First Lien Creditors, may amend or modify the Plan, and any exhibit, schedule or supplement to the Plan (including the Plan Support Documents), at any time prior to the Confirmation Date in accordance with the Bankruptcy Code and Bankruptcy Rules.  A Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claim or Interest of such Holder.

9.8.    Revocation, Withdrawal or Non-Consummation.    Subject to the Restructuring Support Agreement, the Debtors, with the consent of the Required Consenting First Lien Creditors, reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), the assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be null and void; provided, however, that all orders of the Bankruptcy Court and all documents executed pursuant thereto, except the Confirmation Order, shall remain in full force and effect.  In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims by or against any of the Debtors or any other Person, to prejudice in any manner the rights of any of the Debtors or any Person in any further proceedings or to constitute an admission of any sort by any of the Debtors or any other Person.

9.9.    Post-Confirmation Date Retention of Professionals.  Upon the Effective Date, any requirement that Professionals employed by the Reorganized Debtors comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtors will be authorized

to employ and compensate professionals in the ordinary course of business and without the need for Bankruptcy Court approval.

9.10. <u>Exemption from Transfer Taxes</u>. Pursuant to Section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents under the Plan, (b) the creation of any mortgage, deed of trust, Lien, pledge or other security interest under the Plan, (c) the making or assignment of any lease or sublease pursuant to the Plan, or (d) the making or delivery of any deed or other instrument of transfer under, pursuant to, or in connection with the Plan, including, without limitation, any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, assignments, and transfers of tangible property executed in connection with the Plan, or the Confirmation Order, shall not be subject to any document recording, stamp, real estate transfer, sales and use, mortgage recording or other or similar tax or government assessment to the fullest extent provided for under the Bankruptcy Code.

9.11. <u>Payment of Statutory Fees</u>. All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.

9.12. <u>Notice</u>. All notices, requests and demands to or upon the Debtors or the Consenting First Lien Creditors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Debtors**:

Walter Energy, Inc.
3000 Riverchase Galleria, Suite 1700
Birmingham, AL 35244
Facsimile: 205-776-7859
Email: earl.doppelt@walterenergy.com
Attention: Earl H. Doppelt, Esq.

with a copy to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Facsimile: (212) 757-3990
Attention: Kelley A. Cornish, Esq. (kcornish@paulweiss.com) and
Claudia R. Tobler, Esq. (ctobler@paulweiss.com)

- and -

53

Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Facsimile: (205) 521-88--
Attention: Patrick Darby, Esq. (pdarby@babc.com) and
Jay Bender, Esq. (jbender@babc.com)

**If to the Consenting First Lien Creditors**:

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Facsimile: (212) 872-1002
Attention: Ira Dizengoff, Esq. (idizengoff@akingump.com) and Kristine
Manoukian, Esq. (kmanoukian@akingump.com)

Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
Facsimile: (202) 887-4288
Attention: James Savin, Esq. (jsavin@akingump.com)

- and -

Burr Forman LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Facsimile: (205) 244-5617
Attention: Michael L. Hall (mhall@burr.com) and D. Christopher Carson
(ccarson@burr.com)

    9.13. <u>Reservation of Rights</u>. Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

    9.14. <u>No Waiver</u>. Neither the failure of a Debtor to list a Claim or Interest in the Debtor's Schedules, the failure of a Debtor to object to any Claim, Administrative Expense Claim or Interest for purposes of voting, the failure of a Debtor to object to a Claim, Administrative Expense Claim or Interest prior to the Confirmation Date or the Effective Date, nor the failure of a Debtor to assert a Retained Cause of Action prior to the Confirmation Date or the Effective Date shall, in the absence of a legally-effective express waiver or release executed by the Debtor with the approval of the Bankruptcy Court, if required, and with any other consents or approvals required under the Plan, be deemed a waiver or release of the right of a Debtor, a Reorganized Debtor or their respective successors, either before or after solicitation of

votes on the Plan, the Confirmation Date or the Effective Date, to (a) object to or examine such Claim, Administrative Expense Claim or Interest, in whole or in part, or (b) retain or either assign or exclusively assert, pursue, prosecute, utilize, or otherwise act or enforce any Retained Cause of Action against the Holder of such Claim, Administrative Expense Claim or Interest.

Case 15-02741-TOM7    Doc 566    Filed 08/26/15    Entered 08/26/15 16:50:48    Desc Main
Document      Page 58 of 62

Dated: August 26, 2015

**WALTER ENERGY, INC.**

Name: William G. Harvey

By: _/s/ William G. Harvey_____

Title: Executive Vice President & Chief
Financial Officer

**ATLANTIC LEASECO LLC**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General
Counsel & Secretary

**BLUE CREEK ENERGY, INC.**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General
Counsel & Secretary

**JEFFERSON WARRIOR RAILROAD
COMPANY, INC.**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General
Counsel & Secretary

**ATLANTIC DEVELOPMENT AND
CAPITAL LLC**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General
Counsel & Secretary

**BLUE CREEK COAL SALES, INC.**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General
Counsel & Secretary

**J.W. WALTER, INC.**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General
Counsel & Secretary

**JIM WALTER HOMES, LLC**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General
Counsel & Secretary

**JIM WALTER RESOURCES, INC.**

Name: Earl H. Doppelt

By: /s/ Earl H. Doppelt

Title: Executive Vice President, General Counsel & Secretary

**SLOSS-SHEFFIELD STEEL & IRON COMPANY**

Name: Earl H. Doppelt

By: /s/ Earl H. Doppelt

Title: Executive Vice President, General Counsel & Secretary

**TAFT COAL SALES & ASSOCIATES, INC.**

Name: Earl H. Doppelt

By: /s/ Earl H. Doppelt

Title: Executive Vice President, General Counsel & Secretary

**MAPLE COAL CO. LLC**

Name: Earl H. Doppelt

By: /s/ Earl H. Doppelt

Title: Executive Vice President, General Counsel & Secretary

**SP MACHINE, INC.**

Name: Earl H. Doppelt

By: /s/ Earl H. Doppelt

Title: Executive Vice President, General Counsel & Secretary

**TUSCALOOSA RESOURCES, INC.**

Name: Earl H. Doppelt

By: /s/ Earl H. Doppelt

Title: Executive Vice President, General Counsel & Secretary

**V MANUFACTURING COMPANY**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General Counsel & Secretary

**WALTER BLACK WARRIOR BASIN LLC**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General Counsel & Secretary

**WALTER COKE, INC.**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General Counsel & Secretary

**WALTER ENERGY HOLDINGS, LLC**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General Counsel & Secretary

**WALTER EXPLORATION & PRODUCTION LLC**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General Counsel & Secretary

**WALTER HOME IMPROVEMENT, INC.**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General Counsel & Secretary

**WALTER LAND COMPANY**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General Counsel & Secretary

**WALTER MINERALS, INC.**

Name: Earl H. Doppelt

By: _/s/ Earl H. Doppelt_____

Title: Executive Vice President, General Counsel & Secretary

**WALTER NATURAL GAS, LLC**

Name: Earl H. Doppelt


By: _/s/ Earl H. Doppelt_____


Title: Executive Vice President, General
Counsel & Secretary