## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | **Chapter 11** |
| **NEW WEI, INC., *et al.*,**[1] | **Case No. 15-02741-TOM11** |
| **Debtors.** | **Jointly Administered** |

### NOTICE OF DEBTORS' MOTION FOR AN ORDER (A) CONVERTING THE DEBTORS' CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that on January 9, 2017, New WEI, Inc. and its affiliated debtors and debtors-in-possession (each a "<u>Debtor</u>" and, collectively, the "<u>Debtors</u>"), by and through their undersigned counsel, filed the *Debtors' Motion for an Order (A) Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code and (B) Granting Related Relief* (the "<u>Motion</u>").

**PLEASE TAKE FURTHER NOTICE** that objections or responses to the Motion, if any, must be filed with the United States Bankruptcy Court for the Northern District of Alabama, Southern Division, and served so as to be received by the undersigned counsel on or before January

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: New WEI, Inc. (f/k/a Walter Energy, Inc.) (9953); Atlantic Development and Capital, LLC (8121); Atlantic Leaseco, LLC (5308); Blue Creek Coal Sales, Inc. (6986); Blue Creek Energy, Inc. (0986); New WEI 7, Inc. (f/k/a J.W. Walter, Inc.) (0648); Jefferson Warrior Railroad Company, Inc. (3200); New WEI 2, LLC (f/k/a Jim Walter Homes, LLC) (4589); New WEI 13, Inc. (f/k/a Jim Walter Resources, Inc.) (1186); Maple Coal Co., LLC (6791); Sloss-Sheffield Steel & Iron Company (4884); SP Machine, Inc. (9945); Taft Coal Sales & Associates, Inc. (8731); Tuscaloosa Resources, Inc. (4869); V Manufacturing Company (9790); New WEI 19, LLC (f/k/a Walter Black Warrior Basin LLC) (5973); New WEI 18, Inc. (f/k/a Walter Coke, Inc.) (9791); New WEI 22, LLC (f/k/a Walter Energy Holdings, LLC) (1596); New WEI 20, LLC (f/k/a Walter Exploration & Production LLC) (5786); New WEI 1, Inc. (f/k/a Walter Home Improvement, Inc.) (1633); New WEI 6 Company (f/k/a Walter Land Company) (7709); New WEI 16, Inc. (f/k/a Walter Minerals, Inc.) (9714); and New WEI 21, LLC (f/k/a Walter Natural Gas, LLC) (1198).  The location of the Debtors' corporate headquarters is 2100 Southbridge Parkway, Suite 650, Birmingham, Alabama 35209.

1/4163310.4

Case 15-02741-TOM7   Doc 2849   Filed 01/10/17   Entered 01/10/17 16:24:00   Desc
Main Document      Page 1 of 29

23, 2017 at 5:00 p.m. (prevailing Central Time) (the "Objection Deadline").[2]

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held on **January 30, 2017 at 10:15 a.m. (prevailing Central Time)** before the Honorable Tamara O. Mitchell, at the United States Bankruptcy Court for the Northern District of Alabama, Southern Division, Courtroom #3, Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, Alabama 35203-2111 (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE THAT IF NO OBJECTIONS OR RESPONSES ARE RECEIVED IN ACCORDANCE WITH THE TERMS OF THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: January 9, 2017
       Birmingham, Alabama

BRADLEY ARANT BOULT CUMMINGS LLP

By: _____ /s/ Cathleen Moore _____
Jay Bender
Cathleen Moore
James B. Bailey
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Email: jbender@bradley.com, ccmoore@bradley.com,
      jbailey@bradley.com

- and -

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Stephen J. Shimshak (*pro hac vice*)
Kelley A. Cornish (*pro hac vice*)
Claudia R. Tobler (*pro hac vice*)
1285 Avenue of the Americas

---

[2] All deadlines and hearing dates set forth in this notice are based upon the Court's *Order Pursuant to 11 U.S.C. §§ 102 and 105(a) and Bankruptcy Rules 2002(m) and 9007 Implementing Certain Notice and Case Management Procedures* [Docket No. 56].

2

New York, New York  10019
Telephone:  (212) 373-3000
Email: sshimshak@paulweiss.com, kcornish@paulweiss.com,
    ctobler@paulweiss.com

*Counsel to the Debtors and*
*Debtors-in-Possession*

| | |
|---|---|
| In re: | **Chapter 11** |
| **NEW WEI, INC.,** *et al.,*[1] | **Case No. 15-02741-TOM11** |
| **Debtors.** | **Jointly Administered** |

### DEBTORS' MOTION FOR AN ORDER (A) CONVERTING THE DEBTORS' CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF

New WEI, Inc. and its affiliated debtors and debtors-in-possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors"), hereby file this motion (the "Motion") pursuant to section 1112 of title 11 of the U.S. Code (the "Bankruptcy Code") and rules 1017 and 1019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order (A) converting the above-captioned chapter 11 cases (the "Chapter 11 Cases") to cases under chapter 7 of the Bankruptcy Code (the "Chapter 7 Cases"), and (B) granting related relief. In support hereof, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: New WEI, Inc. (f/k/a Walter Energy, Inc.) (9953); Atlantic Development and Capital, LLC (8121); Atlantic Leaseco, LLC (5308); Blue Creek Coal Sales, Inc. (6986); Blue Creek Energy, Inc. (0986); New WEI 7, Inc. (f/k/a J.W. Walter, Inc.) (0648); Jefferson Warrior Railroad Company, Inc. (3200); New WEI 2, LLC (f/k/a Jim Walter Homes, LLC) (4589); New WEI 13, Inc. (f/k/a Jim Walter Resources, Inc.) (1186); Maple Coal Co., LLC (6791); Sloss-Sheffield Steel & Iron Company (4884); SP Machine, Inc. (9945); Taft Coal Sales & Associates, Inc. (8731); Tuscaloosa Resources, Inc. (4869); V Manufacturing Company (9790); New WEI 19, LLC (f/k/a Walter Black Warrior Basin LLC) (5973); New WEI 18, Inc. (f/k/a Walter Coke, Inc.) (9791); New WEI 22, LLC (f/k/a Walter Energy Holdings, LLC) (1596); New WEI 20, LLC (f/k/a Walter Exploration & Production LLC) (5786); New WEI 1, Inc. (f/k/a Walter Home Improvement, Inc.) (1633); New WEI 6 Company (f/k/a Walter Land Company) (7709); New WEI 16, Inc. (f/k/a Walter Minerals, Inc.) (9714); and New WEI 21, LLC (f/k/a Walter Natural Gas, LLC) (1198). The location of the Debtors' corporate headquarters is 2100 Southbridge Parkway, Suite 650, Birmingham, Alabama 35209.

1

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).

2.      The statutory and legal predicates for the relief requested herein are section 1112 of the Bankruptcy Code and Bankruptcy Rules 1017 and 1019.

## PRELIMINARY STATEMENT

3.      The Debtors filed these Chapter 11 Cases over a year ago facing the prospect of exhausting their cash and liquidating in six months. The Chapter 11 Cases allowed the Debtors to avoid piecemeal liquidation and successfully reorganize through two going-concern sales: the "Core Asset Sale" of their principal mining assets to Warrior Met Coal LLC (f/k/a Coal Acquisition, LLC) ("Warrior Met Coal"), and the "Non-Core Asset Sale" of their coke facility and remaining assets to Seminole Coal Resources, LLC, ERP Compliant Coke, LLC, and ERP Environmental (collectively, "Seminole"). The Court approved the Core and Non-Core Asset Sales on January 8, 2016 and February 8, 2016, respectively, and both sales closed by March 31, 2016.

4.      Together, the sales preserved the Debtors' businesses as going-concerns. The mining operations in Alabama continue to operate, employing hundreds of miners in the region and preserving numerous vendor and supplier relationships. The global market for met coal has rebounded over the past several months—demand for met coal is up, prices have risen, and Warrior Met Coal has been hiring additional workers. The Debtors' former coking operations and land management activities are also active, with significant job preservation and commercial relationships intact. In addition, a global settlement reached with the Creditors Committee and

2

the Debtors' secured lenders enabled distributions of equity in Warrior Met Coal to certain holders of general unsecured claims.

5.     Having consummated the sale transactions, the Debtors have transferred, or have obligated themselves to transfer, every asset that they own.  Since the sale closing, the Debtors have been winding down their Chapter 11 estates.  In accordance with the wind down trust agreement established under the asset purchase agreement with Warrior Met Coal, the Debtors have facilitated the orderly wind down of the Debtors' remaining operations and affairs, including the liquidation and collection of substantially all of the Debtors' remaining property.  The Debtors have also satisfied their continuing obligations under the respective asset purchase agreements and the transition services agreement the Debtors entered into with Warrior Met Coal on March 31, 2016 (the "Transition Services Agreement").  Indeed, only two types of assets need further administration:  limited litigation rights, and a handful of insurance premium and dividend rights arising from the Debtors' ownership of a captive Bermuda insurance subsidiary that is itself winding down under Bermuda law (collectively, the "Remaining Assets").[2]  All of the Remaining Assets were sold to Warrior Met Coal and are expected to be transferred to them once liquidated. The Chapter 11 wind down process is now substantially complete.

6.     The Debtors are current on their post-petition costs of running the Chapter 11 Cases and the post-sale wind-down.  Regarding distributions to unsecured creditors, the Debtors facilitated procedures to implement the Creditors Committee's global settlement with the Debtors

---

[2]     The Debtors' Canadian subsidiaries are currently in bankruptcy proceedings in Canada under the Companies' Creditors Arrangement Act ("CCAA").  To the extent any distributions are made to the Debtors out of the CCAA proceedings, such proceeds shall be distributed in accordance with the Warrior Met APA and orders entered by this Court.

1/4163310.4

and their secured lenders.[3]  The procedures established participation parameters for holders of unsecured claims for purposes of distributing the settlement consideration, which included equity in Warrior Met Coal and participation rights in any exit financing related to Warrior Met Coal's acquisition of the Debtors' Core Assets.  Other than as provided under the global settlement, no prospect of payment of unsecured claims exists.

7.     Finally, the Wind Down Trust (defined below) expires on its own terms on February 28, 2017.  Lacking a compelling need to further administer these cases in Chapter 11, and with approximately $1.6 million remaining in the Wind Down Trust for funding a chapter 7 trustee to administer the Remaining Assets, conversion of these cases is now appropriate and justified.  The Debtors accordingly request conversion of the Chapter 11 Cases to ones under Chapter 7 in accordance with the conversion procedures set forth herein.

## BACKGROUND

8.     On July 15, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing these Chapter 11 Cases.

9.     The Debtors continue to manage and operate their businesses as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

10.     On the Petition Date, this Court entered an order consolidating these Chapter 11 Cases for procedural purposes only.

11.     The Bankruptcy Administrator for the Northern District of Alabama has appointed two official committees in these Chapter 11 Cases – the official committee of unsecured creditors

---

[3]     *See Joint Motion for an Order (A) Authorizing Procedures to Implement the Global Settlement and (B) Granting Related Relief* [Docket No. 2107]; *Order (A) Authorizing Procedures to Implement the Global Settlement and (B) Granting Related Relief* [Docket No. 2183].

4

1/4163310.4

(the "Creditors Committee") and a committee of retired employees pursuant to sections 1114(c)(2) and 1114(d) of the Bankruptcy Code (the "Section 1114 Committee").

12.     By an order entered July 15, 2015, the Court authorized the employment, retention, and appointment of Kurtzman Carson Consultants LLC as claims and noticing agent (the "Claims Agent") in the Debtors' Chapter 11 Cases. *See* Docket No. 55.

13.     By an order entered October 2, 2015, the Court appointed Direct Fee Review LLC as the fee examiner (the "Fee Examiner") in the Debtors' Chapter 11 Cases. *See* Docket No. 818.

A.  **The Going Concern Sales**.

14.     On November 5, 2015, the Debtors and Warrior Met Coal executed an Asset Purchase Agreement (as amended, the "Warrior Met Coal APA") pursuant to which the Debtors agreed to sell substantially all of the Debtors' Alabama coal and methane gas operations, subject to higher or better offers (the "Core Assets Sale"). The Alabama coal operations include the historic number 4 and 7 mines, related methane gas operations, and certain additional assets incidental thereto. The Court approved the Core Assets Sale on January 8, 2016. *See* Docket No. 1584. The Core Assets Sale closed on March 31, 2016.

15.     Contemporaneously with the Debtors' marketing efforts relating to their Core Assets, the Debtors also sought a buyer for their coking facility and other assets that Warrior Met Coal elected not to acquire as part of the Core Asset Sale (the "Non-Core Assets"). Towards that end, the Debtors solicited bids for the purchase of the Non-Core Assets. As a result of such efforts, certain of the Debtors, as sellers, negotiated, executed and delivered the Asset Purchase Agreement dated as of January 31, 2016 (the "Non-Core Assets APA") with Seminole. Pursuant to the Non-Core Assets APA, the Debtors party to that agreement agreed to sell substantially all of their Non-Core Assets (the "Non-Core Assets Sale"). The Court approved the Non-Core

5

Assets Sale on February 8, 2016. *See* Docket No. 1863. The Non-Core Assets Sale closed on February 12, 2016.

**B. The Global Settlement**.

16.  In December 2015, to facilitate the Debtors' reorganization efforts and to avoid litigation with the Creditors Committee about the asset sales, the Debtors reached a settlement (the "Global Settlement") with the Creditors Committee and the steering committee of the Debtors' first lien lenders (the "Steering Committee").[4] The Global Settlement provided that the Creditors Committee would (a) consent to the Core Asset Sale, (b) waive its right, and agree not to, bring any potential claims and defenses, challenges or any other claims that it could assert pursuant to the amended final cash collateral order entered in these Chapter 11 Cases, and (c) not challenge or object to the amount, extent, validity or priority of the First Lien Secured Parties' adequate protection claims and liens. In exchange, among other things, the Global Settlement provided that unsecured creditors would (a) receive 1% of common equity in Warrior Met Coal at the closing of the Core Asset Sale, and (b) be able to participate in any exit financing (including any rights offering) on the same terms as the first lien creditors. Warrior Met Coal also agreed to acquire all of the Debtors' causes of action under chapter 5 of the Bankruptcy Code, and agreed to waive such actions at the closing of the Core Asset Sale.

**C. Post-Sale Wind Down Activities**.

17.  The Warrior Met Coal APA established a wind down trust (as subsequently amended, the "Wind Down Trust" and the trustee thereof, the "Wind Down Trustee") for purposes

---

[4]  *See Debtors' Motion for an Order Approving Global Settlement Among the Debtors, Official Committee of Unsecured Creditors, Steering Committee and Stalking Horse Purchaser Pursuant to Fed. R. Bankr. P. 9019* [Docket No. 1207]; *Order Approving Global Settlement Among the Debtors, Official Committee of Unsecured Creditors, Steering Committee and Stalking Horse Purchaser Pursuant to Fed. R. Bankr. P. 9019* [Docket No. 1456].

6

of funding the orderly wind-down of the Debtors' operations and affairs in Chapter 11 after the closing of the Core Asset Sale. As part of the cash consideration Warrior Met Coal paid to the Debtors for the Core Assets, Warrior Met Coal funded the Wind Down Trust with $4,925,000 (the "Wind Down Trust Assets"). The Wind Down Trust purposes were subject to a budget (the "Wind Down Budget") and included the orderly wind-down of the Debtors' remaining operations and affairs under Chapter 11 or Chapter 7, the liquidation and collection of any remaining property of the Debtors' estates under Chapter 11 of the Bankruptcy Code, paying severance and other employee related expenses and the performance of the Debtors' continuing obligations under the Warrior Met Coal APA, the Transition Services Agreement, the Non-Core Assets Sale APA, and the Bankruptcy Code.

18. Since March 31, 2016, the Debtors have satisfied their obligations under the Warrior Met Coal APA and the Transition Services Agreement, and have engaged in the orderly wind-down of the Debtors operations. These wind-down activities included, without limitation, the preparation of tax returns; collection of accounts receivable and payment of collected funds to the appropriate purchasers; collection of prepaid insurance premiums and other assets of the Debtors' captive insurance subsidiary, an entity incorporated under Bermuda law and not a debtor in these Chapter 11 Cases ("Cardem"); rejection of burdensome leases and executory contracts; litigation relating to state and federal taxes; and defense of the Bankruptcy Court's orders in appeals pending in the Court of Appeals for the Eleventh Circuit: (a) an appeal by Dominion Black Warrior Trust of the Court's order authorizing rejection of its executory contract with the Debtors regarding certain mineral rights (the "Dominion Appeal"); and (b) an appeal by the UMWA Combined Benefit Fund and the UMA 1992 Benefit Plan (collectively, the "Coal Act Funds") of the Court's order authorizing the Debtors to terminate their retiree benefit obligations

1/4163310.4

to the Coal Act Funds under section 1114 of the Bankruptcy Code (the "1114 Appeal"). The Dominion Appeal has been dismissed by the Eleventh Circuit. As of the date of this Motion, the 1114 Appeal remains pending. The Eleventh Circuit recently entered a briefing schedule for the 1114 Appeal, under which the Debtors' brief is due on February 2, 2017.

19.     The Debtors are current on paying the costs of administering the Chapter 11 Cases incurred during the wind-down period, and have reconciled the costs and expenses associated with the wind-down activities discussed above with the Wind Down Budget. The Debtors project that as of the Conversion Date (defined below) assuming such date occurs by February 14, 2017, approximately $1.6 million in Wind Down Trust Assets will remain. At the time the Wind Down Trust was created and funded, the Debtors projected that $271,557.00 would remain in the Wind Down trust upon its termination. Based on the current actual balance in the Wind Down Trust, the Debtors project that even after payment of the retainers to certain professionals requested herein, there will be approximately $1.3 million dollars more left in the Wind Down Trust at conversion than was originally budgeted.

20.     The Warrior Met Coal APA also created an escrow account (the "Professional Fee Escrow"), funded by Warrior Met Coal, for payment of approved estate professional fees and expenses incurred through March 31, 2016. The Professional Fee Escrow terminated on September 30, 2016, at which time the $6,408,631.08 remaining in the Professional Fee Escrow was remitted to Warrior Met Coal, in accordance with the terms of the Professional Fee Escrow and the Warrior Met Coal APA. Any professional fees and expenses incurred by the Debtors' estates after March 31, 2016, and authorized by the Court prior to the Conversion Date, shall be paid from the Wind-Down Trust Assets. The Debtors anticipate that any professional fees incurred by the Debtors' estates after March 31, 2016, and authorized by the Court after the

8

Conversion Date, will be paid from the respective professionals' retainers, or by non-debtor parties obligated to pay said fees in accordance with engagement letters filed with the Court. To the extent not paid from retainers or by non-debtor parties, approved fees shall be paid from the chapter 7 estates. After approval and payment of final applications for compensation and reimbursement of expenses by professionals retained in the Chapter 11 Cases (the "Final Fee Applications"), any balances remaining on existing retainers held by chapter 11 professionals shall be paid to Warrior Met Coal in accordance with the Warrior Met Coal APA.

21.      The Debtors propose to allow certain professionals, including the Fee Examiner and the Claims Agent, to continue to do limited work relating to the Chapter 11 Cases for a limited period of time after the Conversion Date. The Fee Examiner would be authorized to review any Final Fee Applications submitted after the Conversion Date by professionals retained in the Chapter 11 Cases. The Claims Agent would continue with its claims and noticing services through April 28, 2017, which will ensure proper notice to parties-in-interest and the smooth transition of the Chapter 11 Cases to Chapter 7 cases. Therefore, the Debtors seek authority to pay retainers to the Fee Examiner and the Claims Agent prior to the Conversion Date in amounts sufficient to cover the cost of their post-conversion services.

22.      Specifically, the Debtors propose to pay the Fee Examiner a retainer in the amount of $25,000 to cover post-conversion services by the Fee Examiner in reviewing the Final Fee Applications of chapter 11 professionals (the "DFR Retainer"). The Fee Examiner's fees are subject to final court approval, and any balance remaining on the DFR Retainer after approval and payment of DFR's final fee application shall be remitted to the Chapter 7 trustee. The Claims Agent is currently holding a retainer in the amount of $46,320.00 (the "KCC Retainer"). The Debtors propose that the Claims Agent be paid for its post-conversion work (i) first, from the

1/4163310.4

KCC Retainer, and (ii) second, from a supplemental retainer in the amount of $100,000 (the "Supplemental KCC Retainer") that the Debtors request authority to pay prior to the Conversion Date. The Debtors submit that the KCC Retainer and the Supplemental KCC Retainer will together be sufficient to cover post-conversion services provided by KCC, including service of the notice of conversion, maintaining the case website, mailings of pleadings filed post-conversion, maintaining the claims register, and working with the clerk's office to transfer claims and noticing information to the Court in a form and manner acceptable to the clerk's office. Any balance remaining on the Supplemental KCC Retainer after completion of the work contemplated herein shall be remitted to the Chapter 7 trustee, except to the extent that the Chapter 7 trustee seeks Court authority to retain the services of the Claims Agent for additional time.

23.     The Chapter 11 Cases successfully enabled the Debtors' businesses to withstand brutal market conditions and survive as going concerns. The new companies currently employ hundreds of individuals, maintain vendor and supplier relationships, and are important contributors to their local economies. The professionals retained in the Chapter 11 Cases, including the Debtors' professionals, the Creditors Committee's professionals, and the Section 1114 Committee's professionals, represented their clients' interests in good faith throughout this difficult case and have contributed to the best possible outcome in trying circumstances. Additionally, each of the members of the Creditors Committee and the 1114 Committee has faithfully discharged its duties to the Debtors' estates and their creditors. The goals of the Chapter 11 Cases have been achieved. Neither the Remaining Assets nor the pendency of the 1114 Appeal warrant the continued expenses of the Chapter 11 Cases. The Wind Down Trust Assets the Debtors propose to remit to the chapter 7 trustee are more than sufficient for the chapter 7 trustee to administer the Remaining Assets and prosecute the 1114 Appeal. Moreover, the Debtors

1/4163310.4

expect that the Wind Down Trust Assets will provide a meaningful recovery for claimants with priority or administrative claims, including those arising under section 503(b)(9) of the Bankruptcy Code, to the extent such claims are unpaid. Accordingly, conversion of these cases at this time, in accordance with the proposed procedures set forth herein, is appropriate under the circumstances.

## **<u>RELIEF REQUESTED</u>**

24.     By this Motion, the Debtors request entry of an order (a) converting the Chapter 11 Cases to Chapter 7 Cases effective February 14, 2017 (the "<u>Conversion Date</u>"); (b) authorizing the payment from the Wind Down Trust Assets, prior to the Conversion Date, of retainers to the Fee Examiner and the Claims Agent to fund the post-conversion activities described herein; (c)  authorizing the Wind Down Trustee to remit any remaining Wind Down Trust Assets to the chapter 7 trustee; (d) establishing a date for submitting final professional fee applications and setting a final fee hearing; and (e) related relief.  Conversion provides the most efficient and fair resolution of these Chapter 11 Cases, maximizes the recovery of administrative expense creditors, and does not impact recoveries for general unsecured creditors, which are governed by the Global Settlement.  Converting the Chapter 11 Cases also will help minimize the further accrual of Chapter 11 administrative expenses.  Moreover, setting the Conversion Date for two weeks after approval of the Motion by the Court will allow the Debtors and their Chapter 11 professionals sufficient time prior to conversion (i) to complete and submit to the Eleventh Circuit their brief defending the Court's 1113/1114 Order; (ii) to pay the requested retainers to the Fee Examiner and the Claims Agent; and (iii) to prepare the Chapter 11 Cases for conversion.

25.     The Debtors request that the Court enter an order approving procedures for the conversion of the Chapter 11 Cases (the "<u>Conversion Procedures</u>") and converting the Chapter 11

1/4163310.4

Cases to Chapter 7 Cases effective on the Conversion Date. A proposed form of the Conversion Notice is attached as <u>Exhibit 1</u> to the form of the proposed order attached hereto as <u>Exhibit A</u>.

26. The Conversion Procedures specifically provide as follows:

a. **Professional Fees.** To the extent professionals retained in the Chapter 11 Cases have not already submitted Final Fee Applications to the Court, all professionals (excluding professionals retained in the ordinary course of business pursuant to the *Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized in the Ordinary Course of Business* [Docket No. 507]), shall submit Final Fee Applications in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and orders of this Court by no later than March 14, 2017 (the "<u>Final Fee Application Deadline</u>"). The Court will schedule a hearing, in the Court's convenience, on such Final Fee Applications on or before April 28, 2017. The Debtors anticipate that Final Fee Applications for most professionals retained in these Chapter 11 Cases will have been filed, heard, and paid from the Wind Down Trust Assets, to the extent approved by the Court, prior to the Conversion Date. With respect to Final Fee Applications filed after the Conversion Date in accordance with the Conversion Procedures, to the extent the Court approves a Final Fee Application: (i) within ten (10) business days after entry of such order, all approved amounts owed for professional fees and expenses incurred after March 31, 2016 shall be paid (x) first, from each professional's retainer to the extent such retainers exist; and (y) thereafter, from the chapter 7 estates. To the extent that the Final Fee Application filed by KPMG, as tax, valuation, and accounting advisors for the Debtors, covers work performed for the Debtors for the benefit of Warrior Met Coal in accordance with the terms of the Additional Engagement letter filed with the Court on September 1, 2016, approved amounts owing to KPMG shall be paid by Warrior Met Coal.

b. **Fee Examiner.** The Debtors are authorized to pay the Fee Examiner a retainer in the amount of $25,000 to cover post-conversion services by the Fee Examiner through April 28, 2017 in reviewing the Final Fee Applications of chapter 11 professionals (the "<u>DFR Retainer</u>"). Upon entry of an order authorizing the Final Fee Applications, the engagement of the Fee Examiner appointed in these Chapter 11 Cases will be immediately terminated, with no further action required by the Debtors or the Court. The Fee Examiner shall submit his Final Fee Application within 30 days of Court approval of the Final Fee Applications, and the Fee Examiner's allowed fees and expenses shall be paid from the DFR Retainer, with any balance remaining on the DFR Retainer after approval and payment of the Fee Examiner's final fee application to be remitted to the chapter 7 trustee.

c. **Claims Agent.** The Claims Agent shall continue to be employed post-

12

conversion through April 28, 2017. The Claims Agent will be paid for its work after the Conversion Date (i) first, from its retainer in the amount of $46,320.00 (the "KCC Retainer"), and (ii) second, from a supplemental retainer in the amount of $100,000 that the Debtors are authorized to pay prior to the Conversion Daye (the "Supplemental KCC Retainer"). The KCC Retainer and the Supplemental KCC Retainer shall cover post-conversion services provided by the Claims Agent through April 28, 2017, including service of the notice of conversion, maintaining the case website, service of pleadings filed post-conversion, maintaining the claims register, and working with the clerk's office to transfer claims and noticing information to the Court in a form and manner acceptable to the clerk's office. After April 28, 2017, the chapter 7 trustee will determine whether, and to what extent, to continue to employ the Claims Agent. Any balance remaining on the Supplemental KCC Retainer on April 28, 2017 shall be remitted to the chapter 7 trustee, except to the extent that the chapter 7 trustee seeks Court authority to retain the Claims Agent for additional time.

d. **Statutory Committees**. On the Conversion Date, the Creditors Committee and the Section 1114 Committee shall be immediately dissolved, and all professionals retained by the Creditors Committee and the Section 1114 Committee shall be immediately discharged, with no further action required by the Debtors, the Creditors Committee or the Section 1114 Committee.

e. **Wind Down Trust**. The Wind Down Trust Agreement and the Wind Down Trust shall not terminate until the Conversion Date (the "Termination Date"). On the Termination Date, or as soon as reasonably practicable thereafter, the Wind Down Trustee shall remit the remaining Wind Down Trust Assets to the chapter 7 trustee appointed in the Chapter 7 Cases. The Wind Down Trustee shall be terminated as soon as the remaining Wind Down Trust assets are remitted to the chapter 7 trustee.

f. **Books and Records.** As soon as reasonably practicable, but in no event more than fourteen days after the assumption of duties by the chapter 7 trustee, the Debtors shall turn over to the chapter 7 trustee the books and records of the Debtors in the Debtors' possession and control, as required by Bankruptcy Rule 1019(4). For purposes hereof, the Debtors may provide copies (including electronic copies) of such books and records to the chapter 7 trustee or instructions for locating and accessing such books and records, and may retain copies of such books and records to the extent necessary to complete the reports required herein.

g. **Reconciliation and Accounting**. Within thirty (30) days of the Conversion Date, the Debtors shall provide the chapter 7 trustee with a reconciliation of the Wind Down Trust, Professional Fee Escrow, and Debtors' remaining bank accounts summarizing: (a) the payments and disbursements made therefrom, (b) to whom such payments and disbursements were made, (c) on which dates, and (d) for which purposes.

1/4163310.4

The Debtors will also similarly summarize any receipts received into the Wind Down Trust, Professional Fee Escrow, or Debtors' remaining bank accounts.

h.    **Schedule of Unpaid Debts.** Within fourteen (14) days of the Conversion Date, the Debtors shall file a schedule of unpaid debts incurred after commencement of the Chapter 11 Cases, including the name and address of each creditor, as required by Bankruptcy Rule 1019(5).

i.    **Final Report**. Within thirty (30) days after the Conversion Date, the Debtors shall file and transmit to the Bankruptcy Administrator a final report and account (the "<u>Final Report</u>") in accordance with Bankruptcy Rule 1019(5)(A).

j.    **Claims**. Upon request of the chapter 7 trustee, the Claims Agent shall (i) forward to the Clerk of this Court an electronic version of all imaged claims; (ii) upload the creditor mailing list into CM/ECF; (iii) docket a final, combined claims register in the lead Walter Energy case containing claims in all the Debtors' cases; and (iv) as soon as reasonably practicable, box and transport all original claims in the manner and to the place reasonably requested by the Clerk of this Court.

k.    **Notice of Conversion**. Within seven (7) days of filing the schedule of unpaid debts, as set forth in paragraph (i) above, the Claims Agent shall serve a notice of conversion, substantially in the form of Exhibit 1 to the Proposed Order (the "<u>Notice of Conversion</u>"), on all parties on the Debtors' creditor matrix and any creditors identified in the schedule of unpaid debts.

l.    **Administrative Claims Bar Date**. Any party claiming an administrative expense claim pursuant to sections 503 or 507 of the Bankruptcy Code arising after commencement of the Chapter 11 Cases and before the Conversion Date, shall file a request for allowance of such claims on or before April 28, 2017 (the "<u>Chapter 11 Administrative Claims Bar Date</u>"). Notice of the Chapter 11 Administrative Claims Bar Date shall be included in the Notice of Conversion. Claims for payment of professional fees and reimbursement of expenses by professionals employed by the estates are not subject to the Chapter 11 Administrative Claims Bar Date, but shall be made in accordance with subparagraph (a) herein.

## <u>BASIS FOR RELIEF REQUESTED</u>

27.    Section 1112(a) of the Bankruptcy Code allows a debtor to convert its case from chapter 11 to chapter 7, unless the debtor is not a debtor in possession, the case was not filed as

14

1/4163310.4

a voluntary case, or the case has already been converted at another's request. 11 U.S.C. § 1112(a).

28. The legislative history for section 1112(a) states that this subsection "gives the debtor the absolute right to convert a voluntarily commenced chapter 11 case in which the debtor remains in possession to a liquidation case." *In re Schuler*, 119 B.R. 191, 192 (Bankr. W.D. Mo. 1990) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S. Rep. No. 989, 95th Cong., 2nd Sess. 117 (1978)). Consistent with this legislative history, courts have also concluded that, provided the exceptions set forth in section 1112(a) do not exist, a debtor has an absolute right to convert its case from Chapter 11 to Chapter 7. *See In re Texas Extrusion Corp.*, 884 F.2d 1142, 1161 (5th Cir. 1988); *In re Kimrow, Inc.*, 534 B.R. 219, 223, 226 (Bankr. M.D. Ga. 2015); *In re Marrill Alarm Systems, Inc.*, 100 B.R. 606, 607 (Bankr. S.D. Fla. 1989); *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 971 (Bankr. E.D. Pa. 1987) (section 1112(a) "gives the debtor an absolute right to convert").

29. None of the limitations provided in section 1112(a) on a debtor's right to convert are present. The Debtors are debtors in possession; each of the Chapter 11 Cases was commenced by filing a voluntary petition for relief; and there have been no prior conversions of the Chapter 11 Cases. Furthermore, extreme or unusual circumstances do not exist that would warrant denial of this Motion. To the contrary, the Chapter 11 Cases serve no further purpose, and their continuance will only increase administrative costs and reduce the funds available for creditor distributions.

30. The Debtors have no material ongoing operations, no material illiquid assets, and no continuing material business purpose other than the administration of the Remaining Assets. The Debtors have sufficient cash in their estates to allow a chapter 7 trustee to administer the

15

Debtors' converted Chapter 7 Cases without imposing a financial burden on the trustee. It is the Debtors' judgment that in the particular circumstances of these Chapter 11 Cases, the goal of maximizing the net recoveries to creditors will best be achieved through the orderly liquidation process administered by a chapter 7 trustee.

## NOTICE

31.     Notice of this Motion will be provided to: (i) counsel to the agent for the Debtors' prepetition secured credit facility; (ii) counsel for the indenture trustee for each of the Debtors' outstanding bond issuances; (iii) counsel to the Steering Committee; (iv) counsel to the Unsecured Creditors Committee; (v) counsel to the Section 1114 Committee; (vi) counsel to Warrior Met Coal, LLC; (vii) the Bankruptcy Administrator; (viii) each professional retained in these Chapter 11 Cases; and (ix) all persons and entities that have filed a request for service of filings in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

*[Remainder of page intentionally left blank.]*

16

1/4163310.4

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested in this Motion and grant the Debtors such other and further relief as this Court deems just and proper.

Dated: January 9, 2017
      Birmingham, Alabama

BRADLEY ARANT BOULT CUMMINGS LLP

By:_____/s/ Cathleen Moore_____
Jay Bender
Cathleen Moore
James B. Bailey
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203
Telephone:  (205) 521-8000
Email: jbender@bradley.com, ccmoore@bradley.com,
      jbailey@bradley.com

- and -

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Stephen J. Shimshak (*pro hac vice*)
Kelley A. Cornish (*pro hac vice*)
Claudia R. Tobler (*pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Telephone:  (212) 373-3000
Email: sshimshak@paulweiss.com, kcornish@paulweiss.com,
      ctobler@paulweiss.com

*Counsel to the Debtors and*
*Debtors-in-Possession*

1/4163310.4

**EXHIBIT A**
**PROPOSED ORDER**

18

1/4163310.4

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | **Chapter 11** |
| **NEW WEI, INC.,** *et al.*,[1] | **Case No. 15-02741-TOM11** |
| **Debtors.** | **Jointly Administered** |

## ORDER

Upon consideration of the motion (the "Motion")[2] of New WEI, Inc. and its affiliated debtors and debtors-in-possession (each a "Debtor" and, collectively, the "Debtors") pursuant to section 1112 of title 11 of the U.S. Code (the "Bankruptcy Code") and rules 1017 and 1019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order (A) converting the above-captioned chapter 11 cases (the "Chapter 11 Cases") to cases under chapter 7 of the Bankruptcy Code (the "Chapter 7 Cases"), and (B) granting related relief; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: New WEI, Inc. (f/k/a Walter Energy, Inc.) (9953); Atlantic Development and Capital, LLC (8121); Atlantic Leaseco, LLC (5308); Blue Creek Coal Sales, Inc. (6986); Blue Creek Energy, Inc. (0986); New WEI 7, Inc. (f/k/a J.W. Walter, Inc.) (0648); Jefferson Warrior Railroad Company, Inc. (3200); New WEI 2, LLC (f/k/a Jim Walter Homes, LLC) (4589); New WEI 13, Inc. (f/k/a Jim Walter Resources, Inc.) (1186); Maple Coal Co., LLC (6791); Sloss-Sheffield Steel & Iron Company (4884); SP Machine, Inc. (9945); Taft Coal Sales & Associates, Inc. (8731); Tuscaloosa Resources, Inc. (4869); V Manufacturing Company (9790); New WEI 19, LLC (f/k/a Walter Black Warrior Basin LLC) (5973); New WEI 18, Inc. (f/k/a Walter Coke, Inc.) (9791); New WEI 22, LLC (f/k/a Walter Energy Holdings, LLC) (1596); New WEI 20, LLC (f/k/a Walter Exploration & Production LLC) (5786); New WEI 1, Inc. (f/k/a Walter Home Improvement, Inc.) (1633); New WEI 6 Company (f/k/a Walter Land Company) (7709); New WEI 16, Inc. (f/k/a Walter Minerals, Inc.) (9714); and New WEI 21, LLC (f/k/a Walter Natural Gas, LLC) (1198). The location of the Debtors' corporate headquarters is 2100 Southbridge Parkway, Suite 650, Birmingham, Alabama 35209.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that adequate and proper notice of the Motion has been given and that no other or further notice need be given; and the Court having found and determined that the professionals serving in the Chapter 11 Cases, including the professionals for the Debtors, the Creditors Committee (and each of its members) and the 1114 Committee (and each of its members), have acted in good faith and in the best interest of the estates, and that each of the members of the Creditors Committee and the 1114 Committee have faithfully discharged their duties under the Bankruptcy Code in good faith; that the objectives of the Chapter 11 Cases have been accomplished; and that the relief sought in the Motion is in the best interests of the Debtors, their estates and all parties in interest; and after due deliberation and sufficient cause appearing therefor; it is hereby ORDERED, ADJUDGED and DECREED that:

1. The Motion is GRANTED as set forth herein.

2. The Chapter 11 Cases shall be converted to cases under Chapter 7 of the Bankruptcy Code on February 14, 2017 (the "Conversion Date").

3. The Debtors are authorized to pay from the Wind Down Trust Assets, prior to the Conversion Date, the DFR Retainer and the KCC Retainer.

4. On the Conversion Date, the Wind Down Trustee shall remit any remaining Wind Down Trust Assets to the chapter 7 trustee.

5. The following Conversion Procedures are hereby approved:

  a. **Professional Fees.** To the extent professionals retained in the Chapter 11 Cases have not already submitted Final Fee Applications to the Court, all professionals (excluding professionals retained in the ordinary course of business pursuant to the *Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized in the Ordinary Course of Business* [Docket No. 507]), shall submit Final Fee Applications in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and orders of this Court by no later than March 14, 2017 (the "Final Fee

2

1/4163310.4

Application Deadline"). The Court will schedule a hearing, in the Court's convenience, on such Final Fee Applications on or before April 28, 2017. The Debtors anticipate that Final Fee Applications for most professionals retained in these Chapter 11 Cases will have been filed, heard, and paid from the Wind Down Trust Assets, to the extent approved by the Court, prior to the Conversion Date. With respect to Final Fee Applications filed after the Conversion Date in accordance with the Conversion Procedures, to the extent the Court approves a Final Fee Application: (i) within ten (10) business days after entry of such order, all approved amounts owed for professional fees and expenses incurred after March 31, 2016 shall be paid (x) first, from each professional's retainer to the extent such retainers exist; and (y) thereafter, from the chapter 7 estates. To the extent that the Final Fee Application filed by KPMG, as tax, valuation, and accounting advisors for the Debtors, covers work performed for the Debtors for the benefit of Warrior Met Coal in accordance with the terms of the Additional Engagement letter filed with the Court on September 1, 2016, approved amounts owing to KPMG shall be paid by Warrior Met Coal.

b. **Fee Examiner**. The Debtors are authorized to pay the Fee Examiner a retainer in the amount of $25,000 to cover post-conversion services by the Fee Examiner through April 28, 2017 in reviewing the Final Fee Applications of chapter 11 professionals (the "<u>DFR Retainer</u>"). Upon entry of an order authorizing the Final Fee Applications, the engagement of the Fee Examiner appointed in these Chapter 11 Cases will be immediately terminated, with no further action required by the Debtors or the Court. The Fee Examiner shall submit his Final Fee Application within 30 days of Court approval of the Final Fee Applications, and the Fee Examiner's allowed fees and expenses shall be paid from the DFR Retainer, with any balance remaining on the DFR Retainer after approval and payment of the Fee Examiner's final fee application to be remitted to the chapter 7 trustee.

c. **Claims Agent.** The Claims Agent shall continue to be employed post-conversion through April 28, 2017. The Claims Agent will be paid for its work after the Conversion Date (i) first, from its retainer in the amount of $46,320.00 (the "<u>KCC Retainer</u>"), and (ii) second, from a supplemental retainer in the amount of $100,000 that the Debtors are authorized to pay prior to the Conversion Daye (the "<u>Supplemental KCC Retainer</u>"). The KCC Retainer and the Supplemental KCC Retainer shall cover post-conversion services provided by the Claims Agent through April 28, 2017, including service of the notice of conversion, maintaining the case website, service of pleadings filed post-conversion, maintaining the claims register, and working with the clerk's office to transfer claims and noticing information to the Court in a form and manner acceptable to the clerk's office. After April 28, 2017, the chapter 7 trustee will determine whether, and to what extent, to continue to employ the Claims Agent. Any balance remaining on the Supplemental KCC Retainer on April 28, 2017 shall be remitted to the chapter 7 trustee, except to the extent that the chapter 7

3

trustee seeks Court authority to retain the Claims Agent for additional time.

d.      **Statutory Committees**. On the Conversion Date, the Creditors Committee and the Section 1114 Committee shall be immediately dissolved, and all professionals retained by the Creditors Committee and the Section 1114 Committee shall be immediately discharged, with no further action required by the Debtors, the Creditors Committee or the Section 1114 Committee.

e.      **Wind Down Trust**. The Wind Down Trust Agreement and the Wind Down Trust shall not terminate until the Conversion Date (the "<u>Termination Date</u>"). On the Termination Date, or as soon as reasonably practicable thereafter, the Wind Down Trustee shall remit the remaining Wind Down Trust Assets to the chapter 7 trustee appointed in the Chapter 7 Cases. The Wind Down Trustee shall be terminated as soon as the remaining Wind Down Trust assets are remitted to the chapter 7 trustee.

f.      **Books and Records.** As soon as reasonably practicable, but in no event more than fourteen days after the assumption of duties by the chapter 7 trustee, the Debtors shall turn over to the chapter 7 trustee the books and records of the Debtors in the Debtors' possession and control, as required by Bankruptcy Rule 1019(4). For purposes hereof, the Debtors may provide copies (including electronic copies) of such books and records to the chapter 7 trustee or instructions for locating and accessing such books and records, and may retain copies of such books and records to the extent necessary to complete the reports required herein.

g.      **Reconciliation and Accounting**. Within thirty (30) days of the Conversion Date, the Debtors shall provide the chapter 7 trustee with a reconciliation of the Wind Down Trust, Professional Fee Escrow, and Debtors' remaining bank accounts summarizing: (a) the payments and disbursements made therefrom, (b) to whom such payments and disbursements were made, (c) on which dates, and (d) for which purposes. The Debtors will also similarly summarize any receipts received into the Wind Down Trust, Professional Fee Escrow, or Debtors' remaining bank accounts.

h.      **Schedule of Unpaid Debts.** Within fourteen (14) days of the Conversion Date, the Debtors shall file a schedule of unpaid debts incurred after commencement of the Chapter 11 Cases, including the name and address of each creditor, as required by Bankruptcy Rule 1019(5).

i.      **Final Report**. Within thirty (30) days after the Conversion Date, the Debtors shall file and transmit to the Bankruptcy Administrator a final report and account (the "<u>Final Report</u>") in accordance with Bankruptcy Rule 1019(5)(A).

j.      **Claims**. Upon request of the chapter 7 trustee, the Claims Agent shall

1/4163310.4

(i) forward to the Clerk of this Court an electronic version of all imaged claims; (ii) upload the creditor mailing list into CM/ECF; (iii) docket a final, combined claims register in the lead Walter Energy case containing claims in all the Debtors' cases; and (iv) as soon as reasonably practicable, box and transport all original claims in the manner and to the place reasonably requested by the Clerk of this Court.

k.     **Notice of Conversion**.  Within seven (7) days of filing the schedule of unpaid debts, as set forth in paragraph (i) above, the Claims Agent shall serve a notice of conversion, substantially in the form of Exhibit 1 to this Order (the "Notice of Conversion"), on all parties on the Debtors' creditor matrix and any creditors identified in the schedule of unpaid debts.

l.     **Administrative Claims Bar Date**.  Any party claiming an administrative expense claim pursuant to sections 503 or 507 of the Bankruptcy Code arising after commencement of the Chapter 11 Cases and before the Conversion Date, shall file a request for allowance of such claims on or before April 28, 2017 (the "Chapter 11 Administrative Claims Bar Date"). Notice of the Chapter 11 Administrative Claims Bar Date shall be included in the Notice of Conversion.  Claims for payment of professional fees and reimbursement of expenses by professionals employed by the estates are not subject to the Chapter 11 Administrative Claims Bar Date, but shall be made in accordance with subparagraph (a) herein.

_____

Honorable Tamara O. Mitchell
United States Bankruptcy Judge

5

1/4163310.4

## EXHIBIT 1
## NOTICE OF CONVERSION

6

1/4163310.4

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | **Chapter 11** |
| **NEW WEI, INC.**, *et al.*,[1] | **Case No. 15-02741-TOM11** |
| **Debtors.** | **Jointly Administered** |

## NOTICE OF CONVERSION AND CHAPTER 11
## ADMINISTRATIVE CLAIMS BAR DATE

**PLEASE TAKE NOTICE** that on January 9, 2017, the Debtors filed the *Debtors' Motion for an Order (A) Converting the Debtors' Chapter 11 Cases to Chapter 7 and (B) Granting Related Relief* [Docket No. _____] (the "Conversion Motion").

**PLEASE TAKE FURTHER NOTICE** that on January __, 2017 the Court entered an Order granting the Conversion Motion [Docket No. _____] (the "Conversion Order").[2]

**PLEASE TAKE FURTHER NOTICE** that under the Conversion Order, the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code effective February 14, 2017.

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: New WEI, Inc. (f/k/a Walter Energy, Inc.) (9953); Atlantic Development and Capital, LLC (8121); Atlantic Leaseco, LLC (5308); Blue Creek Coal Sales, Inc. (6986); Blue Creek Energy, Inc. (0986); New WEI 7, Inc. (f/k/a J.W. Walter, Inc.) (0648); Jefferson Warrior Railroad Company, Inc. (3200); New WEI 2, LLC (f/k/a Jim Walter Homes, LLC) (4589); New WEI 13, Inc. (f/k/a Jim Walter Resources, Inc.) (1186); Maple Coal Co., LLC (6791); Sloss-Sheffield Steel & Iron Company (4884); SP Machine, Inc. (9945); Taft Coal Sales & Associates, Inc. (8731); Tuscaloosa Resources, Inc. (4869); V Manufacturing Company (9790); New WEI 19, LLC (f/k/a Walter Black Warrior Basin LLC) (5973); New WEI 18, Inc. (f/k/a Walter Coke, Inc.) (9791); New WEI 22, LLC (f/k/a Walter Energy Holdings, LLC) (1596); New WEI 20, LLC (f/k/a Walter Exploration & Production LLC) (5786); New WEI 1, Inc. (f/k/a Walter Home Improvement, Inc.) (1633); New WEI 6 Company (f/k/a Walter Land Company) (7709); New WEI 16, Inc. (f/k/a Walter Minerals, Inc.) (9714); and New WEI 21, LLC (f/k/a Walter Natural Gas, LLC) (1198). The location of the Debtors' corporate headquarters is 2100 Southbridge Parkway, Suite 650, Birmingham, Alabama 35209.

[2]  Terms not defined herein shall have the meaning ascribed to them in the Conversion Order.

1/4163310.4

Case 15-02741-TOM7    Doc 2849    Filed 01/10/17    Entered 01/10/17 16:24:00    Desc
Main Document      Page 28 of 29

**PLEASE TAKE FURTHER NOTICE** that any party claiming an administrative expense claim pursuant to sections 503 or 507 of the Bankruptcy Code arising after commencement of the Chapter 11 Cases and before the Conversion Date, shall file a request for allowance of such claims on or before April 28, 2017 (the "Chapter 11 Administrative Claims Bar Date").

Dated: _____, 2017
       Birmingham, Alabama

BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203
Telephone:  (205) 521-8000

- and -

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019
Telephone:  (212) 373-3000

*Counsel to the Debtors and
Debtors-in-Possession*

2