IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| NEW WEI, INC.,[1] ) | Case No. 15-02741-TOM-7 |
| ) | |
| Debtor. ) | |

_____

**MEMORANDUM OPINION AND ORDER DENYING THOMAS J. LYNCH'S
MOTION FOR AN ALLOWANCE OF AN ADMINISTRATIVE PRIORITY CLAIM**

THIS MATTER came before the Court for hearing on October 3, 2017 on the Motion/Application/Request of Thomas J. Lynch for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A), § 503(c)(1) and (2), and § 507(a)(2) (the "Application") filed by Thomas J. Lynch ("Lynch") on April 26, 2017, seeking administrative expense priority for the payment of a severance benefit in the amount of $285,547.80. Lynch contends this amount is due under a prepetition employment agreement with the Debtor, Walter Energy, Inc. (the "Debtor"), when his employment was terminated after the filing of the bankruptcy petition in this case. The motion is opposed by the Chapter 7 Trustee and by Warrior Met Coal, Inc. ("Warrior Met").[2] At the hearing before the Court on October 3, 2017, the parties offered evidence, including live testimony, and presented oral arguments. The Court permitted the parties to submit supplemental briefs in support of their positions.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[3]

---

[1] This case was originally styled *In re Walter Energy, Inc.* After a sale of substantially all of the assets, the business name changed to New WEI, Inc. and thus the style of the bankruptcy case changed as well.
[2] Warrior Met purchased many of the Debtor's assets.
[3] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A) and (B).[4] This Court has considered the pleadings, arguments of counsel, the testimony of the witness, the exhibits, and the law, and finds and concludes as follows:[5]

## FINDINGS OF FACTS[6]

According to his testimony, Lynch is a human resources professional with more than thirty years of labor relations and human resources experience. Lynch has served as a labor relations attorney, negotiating labor contracts and managing employee relations. Lynch testified that the Debtor began recruiting Lynch for a position as its Senior Vice President of Human Resources in March of 2012. According to Lynch, the Debtor's President and CEO, Walter J. Scheller ("Scheller") informed him that any employment offer would include a severance package, which Lynch testified was important to him since he had been in a position of having been previously involuntarily terminated. On March 22, 2012, Lynch signed an employment agreement (the "Employment Agreement") with the Debtor for the position of Senior Vice President of Human Resources. Lynch Exh. 3. The Employment Agreement, which contained non-competition and non-disparagement provisions, outlined the terms and conditions of employment as well as provisions for severance pay and other benefits that he would be entitled to, including a monthly payment amount for twelve months based on his salary and bonuses, if

---

The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[4] 28 U.S.C. §157(b)(2)(A) and (B) provides as follows:
  (b)(2) Core proceedings include, but are not limited to–
    (A) matters concerning the administration of the estate;
    (B) allowance or disallowance of claims against the estate . . . [.]

[5] This Memorandum Opinion and Order constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[6] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

the Debtor terminated Lynch's employment without cause. *Id*.

Lynch testified that he began working for the Debtor in April 2012. He further testified that in June of 2015 Scheller informed him that management cuts had to be made, and gave him the choice of leaving at that time with two and one-half months' pay or remaining employed until August 31, 2015, staying on the payroll, with his Employment Agreement in place.[7] According to Lynch he chose to stay through August 31, 2015 so that he would be employed as he conducted a job search, so that he would potentially receive a quarterly bonus payment, and because, based on what Scheller had told him, it could be more favorable for him if the Debtor filed bankruptcy prior to the termination of his employment. Lynch explained that after his conversation with Scheller he stopped going into the office to work but was available on an as-needed basis for most of June and all of July and August 2015, although he was on vacation for two or three weeks during that time. Lynch stated he has been paid for his services through August 31, 2015.

Lynch testified that he continued to abide by the Employment Agreement by not revealing any confidential information, not making any disparaging remarks about the Debtor, not engaging in employment that could have been considered competition with the Debtor, and not enticing any of the Debtor's employees to leave the company. Lynch explained that after some of his prior jobs he had made disparaging comments about the former employer and attempted to hire away employees from the former employer, but that he never did either with regard to the Debtor. Lynch testified that after his termination he had considered working in labor relations and asserted that he had knowledge that could have been beneficial to unions, such as knowledge of negotiations strategy, but did not pursue any such employment due to the

---

[7] The Court takes judicial notice that an Order approving the Debtor's Key Employee Retention Plan had been entered in this case on December 28, 2015. Lynch testified that he was not a part of the KERP.

Employment Agreement. He admitted, however, that the United Mineworkers' Union never reached out to him to discuss employment.

The Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on July 15, 2015, after the time that Lynch had the conversation with Scheller. Lynch's employment with the Debtor ended weeks later, on August 31, 2015. Lynch testified that sometime after the bankruptcy filing he received a notice that the Debtor proposed to assume his Employment Agreement. He further testified that he filed an objection, not to the assumption of the Employment Agreement itself, but to the proposed cure amount of $0. *See* Docs. 1171 and 1348. Thereafter, on April 6, 2016, the Debtor filed an omnibus motion seeking, among other things, rejection of the Employment Agreement *nunc pro tunc* to April 6, 2016. *See* Doc. 2264. The omnibus motion was granted by this Court on April 27, 2016. *See* Doc. 2335. On April 26, 2017, Lynch filed his Application that is now before this Court. Doc. 2982.

It is Lynch's contention that his abiding by the non-disparagement and non-compete clauses he provided value, and thus a benefit, to the estate post-petition. As a result, Lynch claims he is due to be paid as an administrative expense $285,547.80 for severance payments described in the Employment Agreement. While Lynch asserted in his Application and supporting Brief that he seeks allowance of an administrative expense under 11 U.S.C. § 503(b)(1)(A), (c)(1), and (c)(2), as well as 11 U.S.C. § 507(a)(2), Lynch's arguments focus primarily on § 503(b)(1).

## **CONCLUSIONS OF LAW**

### **11 U.S.C. § 503(b)(1)(A)**

Lynch asserts that he is entitled to an administrative expense under § 503(b)(1)(A)[8] of the

---

[8] 11 U.S.C. § 503(b)(1)(A) provides:
(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed

4

Bankruptcy Code because he provided a benefit to the Debtor's estate by honoring the non-competition and non-disparagement terms of the Employment Agreement following his termination. Warrior Met asserts Lynch is not entitled to an administrative expense because the Lynch's right to severance pay arose pre-petition when the Employment Agreement was executed, and in addition, the estate received no benefit post-petition from Lynch's inactivity.

Under § 503(b)(1)(A), administrative expenses shall be allowed for actual and necessary costs of preserving the estate. 11 U.S.C. § 503(b)(1)(A). Two requisites must be present in order for a claim to qualify as an administrative expense. First, "an expenditure must have occurred, or an obligation must have been incurred, post-petition." *In re Hackney*, 351 B.R. 179, 184 (Bankr. N.D. Ala. 2006) (Cohen, J.) (collecting cases). Second, "[t]he expenses must confer a 'concrete benefit to the debtor's estate' . . . ." *In re Faber*, 477 B.R. 912, (Bankr. M.D. Fla. 2012) (Briskman, J.) (quoting *In re Sports Shinko*, 333 B.R. 483, 490 (Bankr. M.D. Fla. 2005)). In an application for administrative expense, the burden of proof by a preponderance of the evidence is on the movant. *Tippins Bank and Trust v. Jarriel (In re Jarriel)*, 518 B.R. 140, 146 (Bankr. S.D. Ga. 2014).

**Post-petition transaction**

"[A]n expense is entitled to administrative priority treatment only if . . . it results from a transaction between the claimant and the trustee of the bankruptcy estate or a debtor in

---

under section 502(f) of this title, including--
(1)(A) the actual, necessary costs and expenses of preserving the estate including--
(i) wages, salaries, and commissions for services rendered after the commencement of the case; and
(ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title[.]

5

possession . . . ." *Lasky v. Phones For All, Inc. (In re Phones For All, Inc.)*, 362 B.R. 914, 918 (N.D. Tex. 2001); s*ee also In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 659 (Bankr. D. Del. 2003) ("'[the claimant] must show either that the debtor-in-possession (not the pre-petition entity) incurred the transaction on which the claim is based, or that the claimant furnished the consideration to the debtor-in-possession (not the pre-petition entity).'" (alteration in original) (quoting *In re CIS Corp.*, 142 B.R. 640, 643 (S.D.N.Y. 1992))); *Hackney*, 351 B.R. at 185 ("'Pre-filing debts are not administrative expenses; they are the antithesis of administrative expenses.'" (quoting *In re Kmart Corp.*, 359 F.3d 866, 872 (7th Cir. 2004))); *In re CEI Roofing, Inc.*, 315 B.R. 50, 54 (Bankr. N.D. Tex. 2004).

The claim of a creditor arising under a pre-petition contract is a general unsecured claim, even if the time for performance occurs post-petition. *See Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.)*, 64 F.3d 141, 144-46 (4th Cir. 1995). The rule holds true for severance payments – they are pre-petition claims when they arise from an agreement executed pre-petition, and the fact that payment is contingent (and perhaps comes due post-petition) is of no consequence. *See McMillian v. FDIC*, 81 F.3d 1041, 1047 (11th Cir. 1996). In *McMillian v. FDIC*, addressing a claim for severance pay, the Eleventh Circuit Court of Appeals noted that "[a] claim exists before insolvency if it is based on a pre-insolvency contract which requires payment upon a stated event. . . . It is the contract right which must exist before insolvency, not the fully-matured obligation to repay." *Id.*[9]

In *In re Robb & Stucky, Ltd.*, the debtor and one of its officers entered into an employment agreement providing for severance payments and benefits should the officer be

---

[9] Although the *McMillian* case addressed whether a severance pay claim would be allowed in the context of the FIRREA, and not whether the claim would be allowed as an administrative expense, the court's decision nonetheless involved a determination of whether the claim existed before insolvency. *See McMillian*, 81 F.3d at 1047.

6

terminated without cause. *In re Robb & Stucky, Ltd.*, No. 8:11-bk-02801-CED, 2011 WL 3948805, at *1 (Bankr. M.D. Fla. 2011). Sometime thereafter the debtor filed its bankruptcy petition, subsequently terminated the officer's employment, and rejected the employment agreement effective as of the termination date. *Id*. The officer filed an application for payment of administrative expenses. *Id*. at *2. In concluding that the officer held a pre-petition claim, the court noted:

> [A]t the time he executed the Employment Agreement, [the officer] acquired contingent pre-petition rights, which would be triggered upon the occurrence of the contingency, i.e., his termination. The fact that [the officer's] termination occurred post-petition does not alter the fact that the Debtor's liability for [the officer's] severance compensation arises from the pre-petition act of entering into the Employment Agreement. . . . A debt is not entitled to priority solely because the right to payment occurs within the post-petition period.

*Id*.

In this case, Lynch executed the Employment Agreement with the Debtor pre-petition and thus the Debtor's obligation to Lynch arose pre-petition. The fact that Lynch's termination occurred post-petition is irrelevant. In his Brief, Lynch contends that he earned the severance pay post-petition by complying with the restrictions in the Employment Agreement; nonetheless, the fact remains that the obligation was incurred pre-petition and therefore does not satisfy the requirement for an administrative expense.

The Court acknowledges that a contrary result was reached in several of the cases cited by Lynch. However, Court is not persuaded by, and declines to follow, those cases. The decisions in *Straus-Duparquet v. Local Union No. 3*, 386 F.2d 649 (2d Cir. 1967) and *In re Public Ledger*, 161 F.2d 762 (3d Cir. 1947) have been questioned by recent decisions. *See Robb & Stucky Ltd.*, 2011 WL 3948805, at *3; *In re AppliedTheory Corp.*, 312 B.R. 225, 228 (Bankr. S.D.N.Y. 2004); *In re Hooker Invs., Inc.*, 145 B.R. 138, 141 (Bankr. S.D.N.Y. 1992). Further,

*Public Ledger* was decided in 1947, pre-dating the enactment of the Bankruptcy Code. *Robb & Stucky Ltd.*, 2011 WL 3948805, at *3. *Public Ledger* represents a holding that has been recognized as out of step with the Bankruptcy Code. *In re FBI Distrib. Corp.*, 330 F.3d 36, 45 (1st Cir. 2003) ("[T]he *Public Ledger* court used other language to suggest that a debtor in possession could assume a contract by implication, without court approval, and thus be bound by all the terms of the prepetition contract. . . . [T]his is not the law under the Bankruptcy Code.") (citations omitted); *Robb & Stucky Ltd.*, 2011 WL 3948805, at *3 ("the [*Public Ledger*] court, in determining whether severance pay was entitled to priority as costs of administration, equated the employees' continued post-petition employment with an assumption of their contracts . . . . The Bankruptcy Code does not permit such an implied finding[.]"). *Matson v. Alarcon* is inapplicable because the claimant in that decision sought priority under § 507(a)(4) of the Bankruptcy Code, which has not been argued by Lynch as a reason for allowing him an administrative expense. *Matson v. Alarcon*, 651 F.3d 404 (4th Cir. 2011). *Campo Electronics v. Ross* is also inapplicable because, unlike Lynch's Employment Agreement, the employment contract in that case was assumed post-petition. *Campo Elec. v. Ross*, 247 B.R. 646, 649 (E.D. La. 1998).

In his Brief, Lynch cites to *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)* as supporting his contention that he is entitled to an administrative expense. *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950 (1st Cir. 1976). As noted by Lynch, the *Mammoth Mart* court opined:

> If an employment contract provides that all discharged employees will receive severance pay equal to their salaries for a specified period, the consideration supporting the claim being an employee in good standing at the time of the discharge will have been supplied during the [Chapter XI] arrangement, and the former employee will be entitled to priority.

8

Case 15-02741-TOM7    Doc 3230    Filed 01/24/18    Entered 01/24/18 09:00:27    Desc
Main Document    Page 8 of 13

*Mammoth Mart*, 536 F.2d at 955.[10] Under the facts before the Court, the amount of Lynch's severance pay for a specified twelve-month period would be determined based on his salary and bonuses. The *Mammoth Mart* court concluded that under similar facts the consideration of "being an employee in good standing at the time of discharge" was post-petition consideration. However, as previously discussed, there is ample case law, including law from within the Eleventh Circuit, in which courts have concluded that a claim based on a pre-petition contract is a pre-petition claim. The Court is not persuaded by anything to the contrary in *Mammoth Mart*.

### **Benefit to the estate**

Even if Lynch had established that his obligation owed to him was a post-petition obligation, Lynch did not establish that he provided any benefit to the estate. Lynch contends that honoring the non-disparagement and non-competition terms of his Employment Agreement provided an actual and necessary benefit to the Debtor's estate. Providing a potential benefit to a debtor's estate does not arise to the level of a benefit that is "actual and necessary." *In re Mid Region Petroleum, Inc.*, 1 F.3d 1130, 1133 (10th Cir. 1993). *See also Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 866 (4th Cir. 1994) (quotation omitted) (emphasis in original) ("[T]he mere potential of benefit to the estate is insufficient for the claim to acquire status as an administrative expense."). In fact, the benefit must be "'an actual concrete benefit'" before the claim may be paid as an administrative expense. *Jarriel*, 518 B.R. at 146 (quoting *Broadcast*

---

[10] The *Mammoth Mart* court did not confer administrative expense status on the severance pay sought by the employees in that case:

> Here, the situation is quite different. Because the amount of the severance pay claims depends upon the length of employment, the consideration supporting appellants' claims was the services performed for Mammoth Mart over the entire period of each appellant's employment. Since no part of their present claims arise from services performed for the debtor-in-possession, no portion of appellant's claims may receive s 64(a)(1) priority.

*Mammoth Mart*, 536 B.R. at 955. Thus, the *Mammoth Mart* court drew a distinction between consideration provided pre-petition and consideration provided post-petition.

9

*Corp. of Ga. v. Broadfoot (In re Subscription Tel. of Greater Atlanta)*, 789 F.2d 1530, 1532 (11th Cir. 1986)).

In this case, Lynch failed to present any evidence that his inactions provided any actual or necessary benefit to the estate. Lynch asserts that breaching the non-disparagement or non-competition terms of the Employment Agreement would have harmed the estate, and honoring those terms thereby added value to the estate. Lynch also asserts that he could have worked with the United Mine Workers of America (the "Union") and recruited employees of the Debtor absent the non-competition provision. Both assertions are nothing but speculation. Lynch admitted that the Union never contacted him, and he has provided no evidence to establish that his employment with the Union was even a possibility. The Court finds Lynch's inaction in relation to the non-competition and non-disparagement terms fails to rise to the level of "actual and necessary" as required under § 523(b)(1)(A).

Because this Court finds that Lynch's claim is a pre-petition obligation, and Lynch's inaction did not benefit the Debtor's estate, the Court concludes that Lynch is not entitled to an administrative expense under § 503(b)(1)(A).

**<u>11 U.S.C. §§ 503(c)(1) and (c)(2)</u>**

In his Motion and supporting Brief Lynch argues that the amounts he claims are due from the Debtor should be allowed as administrative expenses under Bankruptcy Code §§ 503(c)(1) and (2);[11] however, Lynch did not present testimony or other evidence from which the Court

---

[11] 11 U.S.C. §§ 503(c)(1) and (c)(2) provide:
    (c) Notwithstanding subsection (b), there shall neither be allowed, nor paid--
        (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that--
            (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
            (B) the services provided by the person are essential to the survival of the business; and
            (C) either--

could conclude that he is entitled to an administrative expense under either of these sections.

**11 U.S.C. § 507(a)(2)**

Section 507(a)(2)[12] provides second priority status for administrative expenses. Since no administrative expenses are due to Lynch, any amounts owed to him by the Debtor are not due to be given priority under § 507(a)(2).

**EQUITY**

Both in his Brief and at the hearing, Lynch asked the Court to consider equitable principles to allow Lynch an administrative expense. Lynch's counsel argued at the hearing that that since Lynch's Employment Agreement was originally on a list to be assumed Lynch had reason to believe it would be assumed and thus did not engage in prohibited conduct. It appears that Lynch believes his compliance is enough to warrant the allowance of an administrative claim despite the eventual rejection of his Employment Agreement. This Court, having presided over this case since its inception, notes that during the course of the Debtor's bankruptcy there have been numerous individuals who have suffered financially. For instance, after much

---

> (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
> (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred; [or]
>
> (2) a severance payment to an insider of the debtor, unless--
> (A) the payment is part of a program that is generally applicable to all full-time employees; and
> (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made[.]

[12] 11 U.S.C. § 507(a)(2) provides:
> (a) The following expenses and claims have priority in the following order:
> . . . .
> (2) Second, administrative expenses allowed under section 503(b) of this title, unsecured claims of any Federal reserve bank related to loans made through programs or facilities authorized under section 13(3) of the Federal Reserve Act (12 U.S.C. 343), and any fees and charges assessed against the estate under chapter 123 of title 28.

consideration and deliberation this Court ultimately allowed the Debtor to reject collective bargaining agreements that contained protections for numerous employees, many (if not most) of whom had worked for much less compensation than Lynch. Some of those employees have long-lasting health problems as a result of working in the mines. It would be difficult for this Court to say that equity dictates the allowance of an administrative expense in an amount in excess of $200,000 for one highly-compensated officer who did not get his entire expected benefit from his Employment Agreement while others in dire straits have gone without. Further, in considering the equity of allowing Lynch's claim, the Court notes that other unsecured creditors, including individual small business owners, have also suffered losses. Unfortunately for Mr. Lynch, in weighing the many losses of numerous individuals and entities, the equities do not weigh in his favor. The Court concludes that Lynch is not entitled to an administrative expense on equitable grounds.

## **CONCLUSION**

The Court finds Lynch failed to establish that he is entitled to be paid an administrative expense under Bankruptcy Code §§ 503(b)(1)(A), (c)(1), (c)(2), 507(a)(2), or any equitable principle. As to § 503(b)(1)(A), Lynch's Employment Agreement providing for severance pay under certain conditions was a pre-petition contract, and as such, any amounts due under the contract are pre-petition claims. Furthermore, while Lynch may have refrained from disparaging or competing with his former employer, any benefit that his inaction may have bestowed upon the estate did not rise to the level of a concrete benefit justifying an administrative expense. There is little evidence, if any, before the Court that would allow the Court to entertain Lynch's claim that he is entitled to an administrative expense pursuant to §§ 503(c)(1) or (c)(2), or § 507(a)(2). Lastly, any amounts due to Lynch are not due to be paid as an administrative expense

12

on the basis of equitable principles. Accordingly, Lynch's Application is due to be disallowed.

It is therefore **ORDERED ADJUDGED and DECREED** that the Application is **DISALLOWED**.

Dated: January 24, 2018 /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm